Franklin E. ERICKSON and Helen A. Erickson, Appellants-Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee-Respondent.

No. 77–1511.

United States Court of Appeals, Ninth Circuit.

June 11, 1979.

Wallace T. Hyde, Sacramento, Cal., for appellants-petitioners.

Gilbert E. Andrews, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Carleton Powell, Asst. U. S. Atty., for appellee-respondent.

Before MERRILL and KENNEDY, Circuit Judges, and KING,* District Judge.

SAMUEL P. KING, District Judge.

Franklin E. and Helen A. Erickson (petitioner)[1] appeal the decision of the Tax Court sustaining the Commissioner of Internal Revenue in his determination of deficiencies in petitioner's returns for taxable years 1965 through 1968. Petitioner fur-ther contends that the Tax Court erred in excluding his testimony on the issue of whether the payment by petitioner's wholly-owned corporation of certain entertainment expenses incurred by him resulted in constructive dividends.

I

In May 1962, petitioner and two associates obtained a long-term lease of a parcel of land with a building that was being operated as a drive-in restaurant. Petitioner renovated and expanded the building and renamed it the "Wayside Inn." In 1963, petitioner took over the entire venture. On June 1, 1964, he sold his interest in the Wayside Inn to four corporations for $281,-941. Petitioner was the president and sole shareholder of each of these corporations. On that same date, he entered into a lease-back agreement with the corporations whereby he continued to operate the restaurant. This agreement called for the payment of a fixed annual rent and an equal annual apportionment of net profit and loss from the restaurant operation among the petitioner and the four corporations.

About this same time, the four corporations formed a partnership ("Wayside Investment") and transferred to it the lease-hold interest and improvements. The partnership maintained its books and records and reported income on a fiscal basis for federal income tax purposes, with the first taxable year beginning June 1, 1964 and ending May 31, 1965. For taxable years ending May 31, 1965 through May 31, 1967, Wayside Investment reported its allocable share of the net loss from the restaurant operation on its partnership returns. The depreciation schedules attached to the returns listed the property transferred from the petitioner.

In accordance with the June 1, 1964 agreement, petitioner reported 20 percent of the net loss for the taxable years 1965

---

* Honorable Samuel P. King, United States District Judge, District of Hawaii, sitting by designation.

1. For purposes of this appeal, Helen A. Erickson is a party to the appeal only by virtue of her joint returns for the years in dispute. Accordingly, Franklin E. Erickson is referred to as petitioner.

and 1966. At some point, petitioner drafted a letter from himself, as president of the four corporations, to himself as an individual, which stated that, as of June 1, 1967, the leaseback agreement of June 1, 1964 was rescinded. There was no record of a transfer of the Wayside Inn back to petitioner in the books or records of the petitioner, the four corporations, or the partnership. In addition, as of June 1, 1967, it appeared that the four corporations had net operating losses exclusive of any loss attributable to the operation of the Wayside Inn. For the taxable years 1967 and 1968, petitioner reported 100 percent of the net loss from the restaurant operation and claimed depreciation deductions for property used in the business of the Wayside Inn.[2]

The Commissioner recognized petitioner's allocation of net loss for taxable years 1965 and 1966 as fixed by the leaseback agreement; however, the Commissioner refused to recognize the purported rescission of the leaseback agreement as of June 1, 1967. Consequently, pursuant to section 482[3] of the Internal Revenue Code, the Commissioner disallowed a portion of the petitioner's loss deduction for the taxable years 1967 and 1968. The Commissioner allocated deductions pursuant to the terms of the leaseback agreement and therefore determined that petitioner was entitled to deduct only 20 percent of the net loss and disallowed in full the depreciation deduction claimed by petitioner on the Wayside Inn property.

In another unrelated transaction, petitioner purchased certain real property in Sacramento, California, in 1959. Buildings on the property were rented to Erickson Construction Company, one of petitioner's wholly-owned corporations, and to an unrelated third party. In September 1965, petitioner was notified by the State of California that this property was to be condemned. Petitioner received the condemnation proceeds in 1966 and used them to purchase various parcels of real estate. One such parcel was a lakeshore lot upon which petitioner subsequently built a house and boating facilities. Petitioner testified that he used the house on weekends for the purpose of selling nearby condominium units owned by Erickson Investment Company, another of petitioner's wholly-owned corporations. He stated that he was thus able to save his corporation real estate commissions and other selling expenses. Petitioner did not lease this lakeshore home to Erickson Investment Company nor to any other person. He also did not claim a depreciation deduction for it. The Commission determined that this parcel of real estate did not qualify as replacement property under section 1033 of the Code and consequently assessed the petitioner with a deficiency attributable to the gain recognized upon conversion of the condemned property.

Erickson Construction Company maintained its books and records and reported for federal income tax purposes on a fiscal year beginning June 1 and ending May 31 of each year. For fiscal years ending May 31, 1965 through May 31, 1968, the Commissioner disallowed certain travel and entertainment expenses that petitioner had indi-

**2.** Petitioner now concedes he was entitled to deduct only 20 percent of the net loss for the period January 1, 1967 to May 31, 1967 and was entitled to no depreciation on the Wayside Inn property during that same period; however, petitioner contends that because of the alleged transfer of June 1, 1967, he is entitled to the net loss and depreciation deductions he claimed for the second half of 1967 and all of 1968.

**3.** At that time, 26 U.S.C. § 482 provided:

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated)

owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations, trades, or businesses. On October 4, 1976, Congress amended the 1954 Code, effective February 1, 1977, by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Pub.L. No. 94–455, Title XIX, § 1906(b)(13)(A), 90 Stat. 1834.

vidually charged at clubs, restaurants and various other places but had been paid for by the corporation. Neither the books and records of the corporation nor the petitioner provided substantiating information other than payment to the named payees. The Commissioner determined that these payments, less the dividend exclusion,[4] constituted constructive dividends to the petitioner. At all material times, the corporation had earnings and profits in excess of the amount determined to be dividend income.

During the trial, petitioner attempted to testify as to the business nature of these expenses. The Tax Court refused to permit petitioner's testimony on the grounds that the admission of petitioner's unsubstantiated testimony was improper without corroborating evidence.

## II

Petitioner contends that the conduct of the Commissioner pursuant to section 482 in reallocating the loss and depreciation deductions on account of the operation of the Wayside Inn was "unreasonable, arbitrary and capricious." To support his contention, petitioner argues that there was a transfer of the Wayside Inn from the corporations back to himself at the time of his letter rescinding the leaseback agreement. As proof of such transfer, he points to records indicating that the corporations were indebted to him for over a million dollars and to his testimony that his tax service and company accountants had not been making proper bookkeeping entries. Presumably, petitioner believes that had such a transfer occurred, the full loss and depreciation deductions would have been allocable to him. We find it unnecessary at this time to decide what effect, if any, such a transfer would have had.

Petitioner's contention accurately suggests the appropriate rule of law to be applied in reviewing allocations made pursuant to section 482. The Commissioner has broad discretion under section 482, and neither we nor the Tax Court will counter-

mand his decision unless the taxpayer shows it to be unreasonable, arbitrary or capricious. *Charles Town, Inc. v. Commissioner,* 372 F.2d 415, 422 (4th Cir. 1967).

The Tax Court stressed the timing of the various transactions between the petitioner and his four corporations. When petitioner was faced with losses in June 1964, he sold the Wayside Inn to the corporations and entered into the leaseback agreement; when the corporations were generating losses in 1967 independent of the Wayside operation, he claims that the restaurant property was sold back to him. The Tax Court noted that the earlier June 1, 1964 transfer from the petitioner to the corporation was documented in the books and records of the petitioner and the corporations, but the alleged June 1, 1967 transfer was not reflected in those same records. The Tax Court held that petitioner had failed to prove the June 1, 1967 transfer and thus found as a question of fact that the alleged transfer had never occurred. Unless the Tax Court's finding was "clearly erroneous," we will not disturb its determination. *Wien Consolidated Airlines v. Commissioner,* 528 F.2d 735 (9th Cir. 1976); *Allen v. Commissioner,* 514 F.2d 908 (5th Cir. 1975); *see* I.R.C. § 7482(a).

Weighing the evidence offered by petitioner against the lack of confirmation in the records of the parties to the alleged transfer, we are not convinced that a mistake has been made so as to render the Tax Court's findings "clearly erroneous." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1947). Because the Tax Court found that the Wayside Inn had not been transferred back to the petitioner on June 1, 1967, the restaurant operation continued substantially as before. Thus, the action of the Commissioner in reallocating the losses in accordance with the agreement and in disallowing petitioner's depreciation deduction was not arbitrary or capricious. We therefore affirm the decision of the Tax Court sustaining the Commissioner's disallowance of petitioner's loss and depreciation deduc-

**4.** *See* I.R.C. § 116.

tion from the operation of the Wayside Inn for taxable years 1967 and 1968.

Petitioner next contends that the lakeshore lot that he purchased with a portion of the proceeds resulting from the condemnation of certain rental property qualified as replacement property under section 1033.[5] The thrust of his argument is that he used the acquired property on weekends to further the sale of condominium units belonging to Erickson Investment Company and thus held the property for use in his trade or business. To establish the continuity of his investment, petitioner argues that he not only received rental income from the condemned property, but that as president of Erickson Construction Company, he occupied a portion of the office space which that corporation leased from him. He argues that while using this space he also conducted business as president of his other corporations, including Erickson Investment Company. He further calls the court's attention to certain zoning restrictions limiting use of the lakeshore lot and his simultaneous purchase of a contiguous parcel of real estate that the Commissioner has recognized as qualified replacement property.

In order to qualify as replacement property, the requirements of section 1033 must be met. The condemned property was held by petitioner to produce rental income. The newly-acquired property could qualify by meeting either (1) the "similar or related in service or use" test of section 1033(a)(3)(A) which looks to the relationship of the taxpayer to the two investments, *Filippini v. United States,* 318 F.2d 841, 844 (9th Cir. 1963); or (2) the "like kind" test of section 1033(g)(1)[6] which focuses on the nature and character of the property.[7] The

---

**5.** Although the opinion of the Tax Court and the briefs filed herein cite to I.R.C. section 1033(a)(1), the proper provision in the instant case is I.R.C. section 1033(a)(3) because the petitioner received proceeds from the condemnation that he used to purchase other property, a portion of which is currently in dispute. The issue under either provision is whether the property currently held by the petitioner is "similar or related in service or use" to the converted property.

I.R.C. § 1033(a)(3)(A) provided in relevant part:

(a) General rule.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

. . . . .

(3) Conversion into money where disposition occurred after 1950.—Into money or into property not similar or related in service or use to the converted property . . . the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) Nonrecognition of gain.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. . . .

With minor modifications not relevant here, this section has been redesignated as section 1033(a)(2)(A) by the Tax Reform Act of 1976, Pub.L. No. 94–455, § 1901(a)(128)(A), (B), 90 Stat. 1520 (1976).

**6.** I.R.C. § 1033(g)(1) provided:

(g) Condemnation of real property held for productive use in trade or business or for investment.—

(1) Special Rule.—For purposes of subsection (a), if real property (not including stock in trade or other property held primarily for sale) held for productive use in trade or business or for investment is (as the result of its seizure, requisition, or condemnation, or threat or imminence thereof) compulsorily or involuntarily converted, property of a like kind to be held either for productive use in trade or business or for investment shall be treated as property similar or related in service or use to the property so converted.

This section has been redesignated as section 1033(f)(1) by the Tax Reform Act of 1976, Pub.L. No. 94–455, § 1901(a)(128)(C), 90 Stat. 1520 (1976).

**7.** Treas. Reg. § 1.1031(a)–1(b) specifies that the words "like kind"

"have reference to the nature or character of the property and not to its grade or quality. One kind or class of property may not . . . be exchanged for property of a different kind or class. The fact that any real estate involved is improved or unimproved is not material, for that fact relates only to the grade

Tax Court, however, found that the acquired property was not held either for investment purposes or for the production of income because petitioner received no rental income and claimed no depreciation on account of its use. Moreover, the Court stated that even if there were any business use of the property, it was that of Erickson Investment Company and not that of the petitioner.

■ We agree with the Tax Court that petitioner failed to distinguish between his own use of the property and the trade or business of his corporation. As noted by the court in *Noland v. Commissioner,* 269 F.2d 108 (4th Cir. 1959),

> every person who works for compensation is engaged in the business of earning his pay . . . .. The business of a corporation, however, is not that of its officers, employees or stockholders. Though the individual stockholder-executive, in his own mind, may identify his interest and business with those of the corporation, they legally are distinct, and, ordinarily, if he voluntarily pays or guarantees the corporation's obligations, his expense may not be deducted on his personal return.

*Id.* at 111 (citations omitted).

For a taxpayer to distinguish between his business and that of the corporation requires proof that his conduct "was necessary to keep his job or was otherwise proximately related to maintaining his trade or business as an employee." *Whipple v. Commissioner,* 373 U.S. 193, 204, 83 S.Ct. 1168, 1175, 10 L.Ed.2d 288 (1963) (dictum), *cf. Trent v. Commissioner,* 291 F.2d 669 (2d Cir. 1961) (loans by corporate employee were business bad debt).

> or quality of the property and not to its kind or class. . . . ."
>
> The principles of Treas. Reg. § 1.1031(a)–1(b) for determining whether replacement property is like kind are made applicable to § 1033(g) by Treas. Reg. § 1.1033(g)–1(a).

**8.** I.R.C. § 274(d) provides:
> (d) Substantiation required.—No deduction shall be allowed—

Assuming, *arguendo,* that petitioner's testimony accurately related the use of his lakeshore home, the record does not disclose that petitioner was prompted by any greater motive than his personal desire to reduce the expenses of a corporation in which he had a substantial interest and which was already generating a loss. We do not feel that on the basis of such evidence the Tax Court erred in finding that the petitioner had failed to distinguish between his own business and that of his corporation. "[F]indings of the Tax Court will not be disturbed unless clear error appears. And the burden is on the taxpayer to show such clear error." *Estate of Meyer v. Commissioner,* 503 F.2d 556, 557 (9th Cir. 1974).

In effect, petitioner replaced rental income property with property having personal use. Under section 1033(a)(3), such replacement does not qualify as "similar or related in service or use." Rev.Rul. 70–466, 1972–2 Cum.Bull. 165; Rev.Rul. 76–84, 1976–1 Cum.Bull. 219. Likewise, replacement property held for personal use does not come within the ambit of section 1033(g)(1) since its special rule is limited to replacement property held for productive use in trade or business or for investment. We therefore affirm the Tax Court's decision that the Commissioner properly disqualified the lakeshore lot as replacement property under section 1033.

■ Petitioner finally contends that the Tax Court erred in excluding his testimony concerning certain entertainment expenses incurred by petitioner. If the issue had been whether petitioner could deduct such entertainment expenses, the Tax Court would have been correct in rejecting petitioner's testimony absent records supporting the alleged expenses. I.R.C. § 274.[8]

> (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),
>
> (2) for any item with respect to any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or

The question raised, however, was whether the payment of these expenses by petitioner's wholly-owned corporation constituted constructive dividends to petitioner. If such corporate payments were for petitioner's personal purposes, they constituted constructive dividend income to him. But the fact that such expenditures did not meet section 274 substantiation requirements so as to permit the corporation to deduct them does not necessarily make the payments dividend income under section 61(a)(7).[9] *Ashby v. Commissioner,* 50 T.C. 409, 417 18 (1968). Petitioner should thus be given the opportunity to testify on the issue of constructive dividends. We therefore reverse and remand for further trial on this issue.

(3) for any expense for gifts,
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and
(D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift.

9. I.R.C. § 61(a)(7) provides:
(a) General definition.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(7) Dividends