T.C. Memo. 2007-273

UNITED STATES TAX COURT

DANIEL L. REEVES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8734-02.                    Filed September 12, 2007.

Daniel L. Reeves, pro se.

<u>Wesley F. McNamara</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's Federal income tax for 1995 of $74,571.[1]

_____

    [1] Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and Rule references are to
the Tax Court Rules of Practice and Procedure.  Amounts are
rounded to the nearest dollar.

The issue for decision is whether petitioner received constructive dividends from a company in which he was the sole shareholder.

FINDINGS OF FACT

The parties' stipulation of facts and the attached exhibits are incorporated herein by this reference, and the facts stipulated are so found. At the time the petition was filed, petitioner resided in Wilsonville, Oregon.

A.  Petitioner's Background

In 1995, petitioner was the president, secretary, treasurer, and sole shareholder of Vitamin Village, Inc. (VVI), and performed all of its managerial duties, including managing VVI's product research and development, production, sales, marketing, and advertising.[2] VVI, with a fiscal year ending (FYE) June 30, was in the business of producing, distributing, and selling skin care products, tanning lotions, diet aids, sports performance products, nutritional supplements, health food products, and apparel at both the retail and wholesale levels.

B.  Petitioner's Home and the Floating Structures

On September 24, 1993, petitioner purchased 1.2 acres along the Willamette River in Newberg, Oregon, which included his family residence and a dilapidated houseboat and a floating dock

---

[2] Petitioner incorporated Universal Marketing, Inc. (UMI), on June 1, 1995, to perform VVI's branding, marketing, and advertising.

on the river behind and down a hill from the residence.  The
residence was a two-story house with approximately 2,200 square
feet per floor.  The first floor was a daylight basement used by
the previous owner to store automobiles.  The houseboat and the
dock were connected to petitioner's property by a rundown
gangway.  The houseboat, the dock, and the gangway were in a poor
and dangerous condition.

Shortly after petitioner purchased the property, petitioner
and VVI entered into a lease agreement for $1,000 a month to
provide VVI with access from petitioner's residence to the
houseboat and the dock, the use of his utilities, and the use of
his parking lot, boat, and jet skis for advertising and
promotional purposes.[3]  VVI also rented the first floor of
petitioner's residence for $700 a month to store goods.

In 1995, petitioner and VVI removed the dilapidated
houseboat and the dock and hired a contractor to build a new
houseboat, a 100-foot dock, and a floating garage (floating
structures).  Construction of the floating structures was
completed in the spring of 1996, and they were placed into

---

[3] The $1,000 a month also allowed access to petitioner's
tennis court and an enclosed area where corporate guests could
place their children so they would be safe from accidently
falling into the Willamette river.

service on May 28, 1996.[4]  The Oregon State Marine Board listed VVI as the owner and petitioner as the coowner.[5]

The new houseboat was approximately 43 feet long and 28 feet wide.  It had one floor with three rooms including a living area, a photo studio, and office space, and an open air deck on top which included an outdoor cafe.  Adjacent to the new houseboat was the floating garage where petitioner's boat and jet skis and VVI's tables and chairs were stored.  The garage was covered and securely locked.

Petitioner and VVI shared the costs of the floating structures' construction.  Petitioner paid $80,717 in 1995 and VVI paid a total of $185,327:  $95,046 in FYE June 30, 1995, and $90,281 in FYE June 30, 1996.  Petitioner was not reimbursed.  VVI capitalized the $185,327 and planned to depreciate the costs over a 39-year period.  VVI reported these expenditures on its Forms 4562, Depreciation and Amortization, as leasehold improvements involving nonresidential real property.

VVI and UMI used the floating structures for promotional events, meetings, and advertising photo shoots.  Petitioner used the floating structures for personal purposes approximately 10

---

[4] VVI's Form 4562, Depreciation and Amortization, reported the property was placed into service on May 28, 1996.

[5] Petitioner claimed that only VVI owned the floating structures and he was listed as a coowner because the State required an individual contact.

times a year. Neither petitioner nor VVI kept a log of the use of the floating structures.

In 2002, petitioner sold his residence in Newberg, Oregon, as part of a bankruptcy sale. As part of the sale, VVI sold the floating structures to petitioner's wife's company, Royal Sun Properties, L.L.C., for $100,000 with $55,000 paid as a downpayment.[6]

OPINION

Respondent contends petitioner was the primary beneficiary of the floating structures and VVI received only a slight benefit from its use of the property. As a result, VVI's expenditure of $185,327 to construct the floating structures constituted a constructive dividend to petitioner.

When corporate property that serves no legitimate corporate purpose is used by a shareholder for personal purposes, the value of that property is includable in the shareholder's income as a constructive dividend to the extent of the corporation's earnings and profits.[7] Falsetti v. Commissioner, 85 T.C. 332, 356 (1985). According to the Court of Appeals for the Ninth Circuit, to which

---

[6] As of the date of trial, Royal Sun Properties, L.L.C., still owed VVI $45,000.

[7] Where substantial business and personal uses of the property exist, the expenses may be allocated. Intl. Artists, Ltd. v. Commissioner, 55 T.C. 94, 105 (1970). Such allocation depends upon a comparison of the personal and business considerations. Id.

an appeal of this case would lie, for the value of the personal use of corporate property to be treated as a constructive dividend, the expenses must:  (1) Be nondeductible by the corporation; and (2) represent some economic gain or benefit to the shareholder.  Palo Alto Town & Country Village, Inc. v. Commissioner, 565 F.2d 1388, 1391 (9th Cir. 1977) (the Tax Court must find appropriate facts in the record to support a determination that disallowed expenses constitute constructive dividends to the taxpayer), affg. in part, revg. in part, and remanding T.C. Memo. 1973-223.  A corporation's inability to substantiate a deduction, without more, is not grounds for treating corporate expenditures as constructive dividends to the individual.  Erickson v. Commissioner, 598 F.2d 525, 531 (9th Cir. 1979), affg. in part and revg. in part T.C. Memo. 1976-147; Palo Alto Town & Country Village, Inc. v. Commissioner, supra at 1391; Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225, 1238-1239 (1971); Ashby v. Commissioner, 50 T.C. 409, 417-418 (1968).  Petitioner has the burden of proving respondent's determinations are incorrect.  See Rule 142(a).

This Court found in Vitamin Village, Inc. v. Commissioner, T.C. Memo. 2007-272, that VVI was not entitled to claim depreciation deductions for the costs incurred in constructing the floating structures because it failed to substantiate its business use of the structures in its FYE June 30, 1995 and 1996.

This fact alone is not sufficient grounds for treating the costs of building the floating structures as constructive dividends to petitioner.  See <u>Nicholls, North, Buse Co. v. Commissioner</u>, <u>supra</u> at 1238-1239.

In support of his contention respondent argues that the floating structures conferred an economic gain and benefit upon petitioner because they "reflected a positive light upon petitioner's standing in the community and his wealth", they provided "prestige and [a] positive, youthful image", and they provided security and covered moorage for his boat and jet skis, and petitioner used the property approximately 10 times a year for personal purposes.[8]

The record does not indicate petitioner personally received an economic gain or benefit from the floating structures in 1995. They were under construction in 1995 and were not available for use until May 28, 1996.  Moreover, title to the floating structures was in VVI's name, and when petitioner sold his residence as part of his bankruptcy in 2002, VVI was compensated for the accompanying sale of the floating structures.

---

[8] On brief, respondent additionally argued that petitioner economically benefited when he used the floating structures to justify draws from VVI of $1,000 per month pursuant to the lease agreement between VVI and petitioner.  However, respondent did not assert that the lease agreement between VVI and petitioner lacked corporate purpose, that VVI was not entitled to deduct its leasehold payments, or that petitioner did not report VVI's leasehold payments as income.

Although after May 28, 1996, petitioner used the floating structures approximately 10 times a year for personal purposes, including the storage of his boat and jet skis, he paid $80,717 out of his own pocket to construct the floating structures.[9] Consequently, his interest (approximately 30 percent) in the structures allowed him a reasonable amount of personal use without conferring an economic gain or benefit upon him. The record does not indicate petitioner used the floating structures in an unreasonable manner.

Therefore, this Court finds petitioner did not receive an economic gain or benefit from his personal use of the floating structures. Accordingly, petitioner did not receive a constructive dividend for the amounts VVI paid to construct the floating structures.

The Court, in reaching its holding, has considered all arguments made and concludes that any arguments not mentioned above are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered
for petitioner.

---

[9] Total cost of constructing the floating structures was $266,044, of which VVI and petitioner paid approximately 70 percent ($185,327) and 30 percent, respectively.