T.C. Memo. 2010-266

UNITED STATES TAX COURT

TAX PRACTICE MANAGEMENT, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JOSEPH ANTHONY D'ERRICO, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket Nos. 1477-09, 1483-09.      Filed December 7, 2010.


<u>Adam L. Karp</u>, for petitioners.

<u>Jeremy L. McPherson</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  These cases are before the Court consolidated for purposes of trial, briefing, and opinion.  Tax Practice Management, Inc. (TPM), and Joseph D'Errico (D'Errico) separately petitioned the Court for redetermination of the following deficiencies in Federal income tax:

Tax Practice Management, Inc., docket No. 1477-09

| TYE | Deficiency | Penalty Sec. 6662 |
|---|---|---|
| 4/30/2005 | $40,736 | $8,147 |

Joseph Anthony D'Errico, docket No. 1483-09

| TYE | Deficiency | Penalty Sec. 6662 |
|---|---|---|
| 12/31/2004 | $229,836 | $45,967 |

The issues for decision after concessions[1] are: (1) Whether TPM is entitled to deductions of $166,421 for its year ending April 30, 2005; (2) whether D'Errico must increase his 2004 pass-through income from three wholly owned S corporations by $44,317; (3) whether D'Errico received constructive dividend income of $30,000 from TPM as a result of TPM's paying $30,000 in rent to D'Errico's father for the use of the father's property at 318

---

[1]Petitioners concede that TPM's gross receipts for its fiscal year ending Apr. 30, 2005, are understated by $3,000. Petitioners further concede that the statute of limitations does not bar pass-through adjustments to D'Errico from his three S corporations.

Before trial respondent conceded that TPM's purchase of a 2001 Cessna 172S airplane in December 2004 is not a constructive dividend to D'Errico. On brief respondent concedes that D'Errico did not understate his 2004 income by $43,071. Respondent further concedes that two of D'Errico's S corporations, D'Errico & Wedge, Inc., and D'Errico & McCollor, Inc., are entitled to claim deductions of management fees of $150,000 and $250,000, respectively.

Barton Drive in Stateline, Nevada; and (4) whether petitioners are liable for the accuracy-related penalty.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with attached exhibits, is incorporated herein by this reference. At the time TPM filed its petition, its principal place of business was Nevada. At the time D'Errico filed his petition, he resided in Nevada.

### I.   Background

On October 9, 2008, respondent sent a notice of deficiency for the fiscal year ending April 30, 2005, to TPM. On October 15, 2008, respondent sent a notice of deficiency for 2004 to D'Errico. Petitioners filed timely petitions with this Court.

In 2002 D'Errico operated a tax preparation business through three wholly owned calendar year S corporations: (1) Joseph A. D'Errico & Associates, Inc. (J&A), in Lake Tahoe, Nevada; (2) D'Errico & Wedge, Inc. (D&W), in Mission Hills, California; and (3) D'Errico & McCollor, Inc. (D&M), in Santa Barbara, California. Further, in 2002 D'Errico organized TPM, a wholly owned C corporation with a fiscal year and taxable year ending April 30. TPM was organized to provide training and management

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

services to D'Errico's tax preparation businesses.  In 2003
D'Errico closed J&A's operations.  Further, on January 1, 2005,
D'Errico sold 100 percent of the shares of both D&W and D&M to an
unrelated third party.

II.  <u>TPM</u>

In his notice of deficiency, respondent denied TPM the
following deductions:

| <u>Expense</u> | <u>Amount</u> |
|---|---|
| Sec. 179 expense | $102,000 |
| Depreciation | 7,130 |
| Airplane expenses | 11,287 |
| Auto expenses | 5,143 |
| Meals & entertainment | 1,257 |
| Travel | 4,581 |
| Repairs & maintenance | 1,790 |
| Supplies | 3,233 |
| Rent | 30,000 |
| Total | 166,421 |

In December 2004 TPM purchased a 2001 Cessna 172S airplane
(the airplane) for $137,500.  The airplane was delivered to TPM
on December 23, 2004, at Minden Airport in Nevada.  On December
24, 2004, D'Errico received the airplane on behalf of TPM and
flew it to several destinations in California and Nevada on a
test flight before returning to Minden Airport the next day to
finalize the transaction.  D'Errico testified that he met with
clients to discuss TPM's fees during this trip.  The test flight
was the only time the airplane was used in 2004.

On December 29, 2004, TPM entered into an airplane leasing agreement with Flying Start Aero, an airplane operator. Pursuant to the airplane leasing agreement, Flying Start Aero leased the airplane from TPM for purposes of making the airplane available to the public for rent. The airplane leasing agreement states that the airplane was leased to Flying Street Aero to generate revenue for the purpose of offsetting TPM's airplane operating costs. In 2005 the only use of the airplane was for rental and training purposes. TPM paid expenses of $11,287 with respect to the airplane during the fiscal year ending April 30, 2005.

Additionally, respondent denied TPM's claimed $30,000 deduction for rent paid to Anthony D'Errico, D'Errico's father, pursuant to a lease agreement for use of the father's property at 318 Barton Drive in Stateline, Nevada (the Barton Drive property). The Barton Drive property is a three-bedroom home. D'Errico testified that he used the top-level bedroom and top-level common areas for his personal use and that the two bottom bedrooms and common areas were converted into offices for TPM. Accordingly, TPM entered into a sublease agreement with D'Errico at an annual rate of $9,000 in exchange for use of the Barton Drive property.

Respondent denied additional deductions TPM claimed for automobile expenses, meals and entertainment, travel, repairs and maintenance, and supplies. D'Errico testified that TPM

established an expense reimbursement program whereby D'Errico could incur expenses on behalf of TPM and submit them to TPM for reimbursement. TPM produced D'Errico's hand-written notes documenting expense reimbursements, as well as D'Errico's personal credit card statements reflecting each of TPM's claimed expenses. D'Errico testified that he kept a log describing the nature of these expenses as they relate to TPM's business; however, he did not produce this log at trial.

III. <u>D'Errico</u>

In 2004 J&A filed Form 1120S, U.S. Income Tax Return for an S Corporation, reporting an interest expense of $22,034. J&A was inactive in 2004; however, D'Errico testified that the interest expense accrued on accounts payable due from J&A to TPM for TPM's management fee. D'Errico provided hand-written notes of TPM's accounts receivable to evidence this amount due. These notes do not attribute TPM's accounts receivable to an amount due from J&A and do not describe the source of the amounts due.

As the sole shareholder of J&A, D'Errico included the interest expense deduction claimed by J&A on Schedule E, Supplemental Income and Loss, of his Form 1040, U.S. Individual Income Tax Return. In his notice of deficiency, respondent denied D'Errico the $22,034 interest deduction.

Respondent further denied deductions D'Errico claimed on Schedule E attributable to his ownership interest in D&M for

auto/truck expenses and travel expenses of $4,650 and $2,024, respectively. Similarly, respondent denied deductions D'Errico claimed on Schedule E attributable to his ownership interest in D&W for auto/truck expenses and travel expenses of $4,650 and $10,959, respectively. D'Errico provided hand-written notes listing the above-referenced expenses as well as personal credit card statements to substantiate the claimed deductions. D'Errico's hand-written notes do not include any description of, or reasons for, the expenses incurred.

Finally, as discussed above, TPM paid D'Errico's father $30,000 in rent for use of the Barton Drive property. D'Errico testified that he used the top-level bedroom and top-level common areas of the Barton Drive property for his personal use and that the two bottom bedrooms and common areas were converted into offices for TPM. In his notice of deficiency, respondent determined TPM's $30,000 rent payment to be a constructive dividend to D'Errico.

OPINION

I. <u>Burden of Proof</u>

Respondent's determinations in the notice of deficiency are presumed correct, and petitioners bear the burden of proving them incorrect. See Rule 142(a)(1). Petitioners do not argue that the burden of proof shifts to respondent pursuant to section 7491(a), nor have they shown that the threshold requirements of

section 7491(a) have been met for any of the determinations at issue. Accordingly, the burden remains on petitioners to prove that respondent's determination of deficiencies in their income tax is erroneous.

## II. TPM

Deductions are a matter of legislative grace, and the taxpayer must prove he is entitled to the deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 162(a) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Taxpayers are required to maintain records sufficient to establish the amounts of allowable deductions and to enable the Commissioner to determine the correct tax liability. Sec. 6001; Shea v. Commissioner, 112 T.C. 183, 186 (1999).

If a factual basis exists to do so, the Court may in some contexts approximate an allowable expense, bearing heavily against the taxpayer who failed to maintain adequate records. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). However, in order for the Court to estimate the amount of an expense, the Court must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount

to unguided largesse.  Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957).

Items described in section 274 are subject to strict substantiation rules.  No deduction shall be allowed for, among other things, traveling expenses, entertainment expenses, gifts, and expenses with respect to "listed property" defined in section 280F(d)(4) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement":  (1) The amount of the expense or other item; (2) the time and place of the travel, entertainment or use, or date and description of the gift; (3) the business purpose of the expense or other item; and (4) in the case of entertainment or gifts, the business relationship to the taxpayer of the recipients or persons entertained.  Sec. 274(d).  We may not use the Cohan doctrine to estimate expenses covered by section 274(d).  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

A.   The Airplane

Subject to certain limitations, taxpayers purchasing qualifying property may elect under section 179 to deduct the cost of the property in the year the property is placed in service.  Qualifying section 179 property includes tangible property that is depreciable under section 168 and is described

in section 1245(a)(3) or computer software that is depreciable under section 167 and described in section 1245(a)(3), but only if the property is acquired for use in the "active conduct of a trade or business." Sec. 179(d)(1). As used in section 179 the term "trade or business" has the same meaning as in section 162 and the regulations thereunder, and therefore property held merely for the production of income does not qualify as section 179 property. Sec. 1.179-2(c)(6)(i), Income Tax Regs. "[A]ctive conduct" as used in section 179 means that the taxpayer actively participates in the management or operations of the trade or business. Sec. 1.179-2(c)(6)(ii), Income Tax Regs.

TPM received the airplane on December 24, 2004, and D'Errico subsequently flew it on a test flight to several locations in California and Nevada. D'Errico testified that he also met with clients during this trip to discuss TPM's fees. This test flight was the only use of the airplane before December 29, 2004, when TPM entered into the airplane leasing agreement with Flying Start Aero for purposes of making the airplane available to the public for rent. During the remainder of TPM's fiscal year, the only use of the airplane was for rental and training purposes. We must first decide whether TPM acquired the airplane for use in its trade or business.

To determine whether a taxpayer is conducting a trade or business requires an examination of the facts involved in each

case.  Higgins v. Commissioner, 312 U.S. 212, 217 (1941).  For a taxpayer to be engaged in a trade or business, the primary purpose for engaging in the activity must be for income or profit.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  Whether an enterprise is conducted as a business for profit is a matter of intention and good faith.  Am. Props., Inc. v. Commissioner, 28 T.C. 1100, 1111 (1957), affd. 262 F.2d 150 (9th Cir. 1958).  The reasonableness of the taxpayer's belief that the activity will generate a profit is not relevant.  Hillcone Steamship Co. v. Commissioner, T.C. Memo. 1963-220.  However, a mere hope that an activity will generate profits, in the absence of any specific plan to generate a profit, is inconsistent with an allegation that the belief is in good faith.  See Sutherland v. Commissioner, T.C. Memo. 1968-20.

Thus, whether TPM is entitled to its claimed deductions with regard to the airplane turns initially on whether TPM has demonstrated by virtue of D'Errico's testimony, the test flight, and the airplane leasing agreement with Flying Start Aero that it purchased the airplane with the requisite intent, objective, or motive of making a profit.  Intention is a question of fact to be determined not only from the direct testimony as to intent but also from a consideration of all the evidence, including the conduct of the parties.  Id.  The statement by an interested

party of his intention and purpose is not necessarily conclusive. Id.

Factors to be considered in determining whether an activity is engaged in for profit include: (1) The manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or her advisers, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) the elements of personal pleasure or recreation. Indep. Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726-727 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Antonides v. Commissioner, 91 T.C. 686, 694 n.4 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. No single factor or group of factors is determinative. Golanty v. Commissioner, supra at 426; Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(b), Income Tax Regs. A final determination is made only after considering all facts and circumstances. Indep. Elec.

- 13 -

Supply, Inc. v. Commissioner, supra at 727; Antonides v.
Commissioner, supra at 694; Golanty v. Commissioner, supra at
426.

TPM contends that the airplane was necessary for its
business because at the time of its purchase TPM managed D&W and
D&M and D'Errico was required to travel between Nevada and
California to fulfill TPM's duties.  Additionally, TPM contends
that the airplane was necessary for traveling throughout
California to meet with clients, to market TPM's services, and to
present an aura of success.  At trial D'Errico testified that TPM
entered into the airplane leasing agreement with Flying Start
Aero because he did not have the time to fly the airplane for
marketing trips and to meet with clients during tax season.  He
testified that the airplane leasing agreement allowed the
airplane to start "paying for itself" as another source of income
for TPM.

Respondent contends that the timing of TPM's purchase of the
airplane defeats the claimed deductions.  At the time of the
purchase, D'Errico was in negotiations to sell D&W and D&M.  The
airplane was purchased on December 25, 2004, and D'Errico sold
D&W and D&M on January 1, 2005.  TPM used the airplane only once
before entering into the airplane leasing agreement on December
29, 2004, and that was for the test flight.

Respondent further argues that TPM never anticipated that the rental income derived from the airplane leasing agreement would defray more than a small part of the operating expenses of the airplane. Respondent relies on the airplane leasing agreement, which provides that "* * * [TPM] is leasing said airplane to * * * [Flying Start Aero] with the intention of generating some revenue for purpose of offsetting a portion of the airplane operating costs". Accordingly, respondent argues that TPM has not demonstrated that the airplane was purchased for use in its trade or business.

As discussed above, pursuant to Rule 142(a)(1) respondent's determinations in the notice of deficiency are presumed correct, and petitioners bear the burden of proving them incorrect. We do not find it necessary to analyze all the factors discussed above. TPM has not demonstrated that the airplane was acquired with the requisite intent or motive of making a profit. Other than D'Errico's self-serving testimony, TPM has not presented any evidence that it contemplated using the airplane for purposes of TPM's management or marketing operations. Further, the airplane leasing agreement specifically provides that TPM entered into the agreement with the intention of generating revenue to offset the airplane's operating costs. The Court of Appeals for the Ninth Circuit has held that a profit motive does not exist where "activities represented mere attempts to recoup some of * * *

[the taxpayers'] costs". <u>Carter v. Commissioner</u>, 645 F.2d 784, 786 (9th Cir. 1981), affg. T.C. Memo. 198-202. The record lacks evidence providing any clear indication that TPM possessed the requisite profit motive and intent in purchasing the airplane. Because TPM did not acquire the airplane for use in its trade or business, it is unnecessary for us to analyze the other requirements of section 179. Accordingly, TPM has failed to meet its burden of proof, and we sustain respondent's determinations with regard to the section 179 expense.

As discussed above, section 162(a) allows for the deduction of ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Further, section 167(a) allows as a depreciation deduction a reasonable allowance for the "exhaustion, wear and tear" of property (1) used in a trade or business or (2) held for the production of income. Having determined that TPM did not acquire the airplane for use in its trade or business, we further sustain respondent's determinations with regard to the depreciation and airplane expenses.

B. <u>Rent</u>

Section 162(a)(3) provides for a deduction for ordinary and necessary rental expenses incurred in carrying on a trade or business. TPM claimed a deduction of $30,000 for rent paid to D'Errico's father for use and possession of the Barton Drive

property.  Respondent argues that TPM did not use the Barton Drive property in connection with its trade or business.  Rather, respondent contends that D'Errico used the property for his personal purposes.  D'Errico testified that he used the top-level bedroom and top-level common areas of the Barton Drive property for his personal use and that the two bottom bedrooms and common areas were converted into TPM's offices.  TPM argues that this latter portion of the Barton Drive property was used exclusively for client meetings, bookkeeping, and marketing.  TPM further argues that D'Errico's personal use of the Barton Drive property was limited to the top-level bedroom and top-level common areas. TPM presented a sublease entered into between TPM and D'Errico as evidence of this arrangement.

We find TPM's argument to be unpersuasive.  Outside of D'Errico's testimony, TPM has failed to produce any records of business-related activities conducted at the Barton Drive property or any evidence supporting TPM's need for offices at the Barton Drive property.  TPM's two primary clients, D&W and D&M, were both located in California and conducted their businesses in California.  Further, TPM's rent payments were not made to an unrelated third party but rather to D'Errico's father. Accordingly, TPM has failed to meet its burden of proof, and we sustain respondent's determination with regard to the rent expenses.

C.  Repairs and Maintenance

TPM claimed a deduction for repairs and maintenance expenses incurred in connection with its use of the Barton Drive property. Because we have decided that TPM has failed to establish that it conducted business-related activities at the Barton Drive property, any expenses incurred in connection with the Barton Drive property could not have been incurred in connection with TPM's trade or business.  Accordingly, we sustain respondent's determination with regard to repairs and maintenance expenses.

D.  Meals and Entertainment

The heightened substantiation requirements of section 274 apply to meal and entertainment expenses.  The only evidence TPM produced to substantiate meal and entertainment expenses was D'Errico's personal credit card statements and D'Errico's testimony that TPM reimbursed him for such costs.  Accordingly, TPM has failed to document such expenses with the specificity required by section 274, and we sustain respondent's determination with regard to meals and entertainment.

E.  Travel

The heightened substantiation requirements of section 274 also apply to travel expenses.  Sec. 274(d)(1).  TPM produced receipts and D'Errico's personal credit card statements to substantiate travel expenses.  D'Errico testified that he kept a log describing the nature of these expenses, but he failed to

produce this log at trial.  Other than D'Errico's testimony, TPM has not produced any evidence describing the business purpose of the claimed travel expenses.  Accordingly, we sustain respondent's determination with regard to the travel expenses.

F.    Auto Expenses

Passenger automobiles and any other property used as a means of transportation are generally "listed property" as defined by section 280F(d)(4).  Secs. 274(d)(4), 280F(d)(4)(A)(i) and (ii).  Accordingly, with certain exceptions, taxpayer's deducting car and truck expenses must satisfy the strict substantiation requirements of section 274.  TPM has produced D'Errico's hand-written notes and D'Errico's personal credit card statements documenting auto expenses of $5,143.  However, these documents do not provide sufficient evidence that such expenses were actually incurred as part of TPM's trade or business.  Accordingly, TPM has failed to meet the substantiation requirements of section 274, and we sustain respondent's determination with regard to the auto expenses.

G.    Supplies

TPM has produced nothing more than receipts, D'Errico's personal credit card statements, and D'Errico's testimony to substantiate the claimed deduction for supplies.  TPM has failed to establish that such costs were incurred with a business

purpose.  Accordingly, we sustain respondent's determination with regard to the supplies.

III. D'Errico

   A.   S Corporation Pass-Through Deductions

      1.   Interest Expense

Section 163(a) allows a deduction for interest expenses incurred by a taxpayer within the taxable year on indebtedness. In 2004 J&A claimed an interest expense of $22,034 attributable to accounts payable due from J&A to TPM for TPM's management fee. D'Errico provided hand-written notes of TPM's accounts receivable to evidence this amount due.  As the sole shareholder of J&A, D'Errico included the interest expense claimed by J&A on his individual income tax return.

D'Errico has provided little more than his own testimony in support of the interest expense claimed by J&A.  His hand-written notes do not attribute TPM's accounts receivable to J&A and do not describe the source of the amounts due.  Further, even if the hand-written notes provided evidence that the interest expense due from J&A to TPM had accrued, they do not provide any proof that the expense was paid.  Accordingly, we sustain respondent's determination with regard to the interest expense.

D'Errico contends that the interest expense should be sustained because TPM included that amount as interest income on its Form 1120, U.S. Corporation Income Tax Return.  Having

determined that D'Errico has failed to establish that J&A was entitled to its claimed interest expense deduction, D'Errico is correct in that this item must receive consistent treatment in determining TPM's tax liability. Accordingly, an adjustment must be made to remove $22,034 of interest income attributable to TPM's accounts receivable from J&A in the relevant tax years.

### 2. Auto/Truck and Travel

As the sole shareholder of D&M, D'Errico claimed flow-through deductions on his individual tax return for auto/truck expenses and travel expenses attributable to D&M of $4,650 and $2,024, respectively. Similarly, as the sole shareholder of D&W, D'Errico claimed flow-through deductions on his individual tax return for auto/truck expenses and travel expenses attributable to D&W of $4,650 and $10,959, respectively. As discussed above, auto/truck expenses and travel expenses are subject to the strict substantiation requirements of section 274. D'Errico has failed to sufficiently document the nature and purpose of these expenses. Further, D'Errico did not testify about any specific facts regarding these expenses. Accordingly, we sustain respondent's determination with regard to the auto/truck expenses and travel expenses.

### B. Constructive Dividend

Section 301 requires a taxpayer to include in gross income amounts received as dividends. Generally, a dividend is a

distribution of property by a corporation to its shareholders out of its earnings and profits. Sec. 316(a). A dividend need not be formally declared or even intended by a corporation. Noble v. Commissioner, 368 F.2d 439, 442 (9th Cir. 1966), affg. T.C. Memo. 1965-84. When a shareholder's use of corporate property serves no legitimate corporate purpose, the value of the use of that property may be includable in the shareholder's income as a constructive dividend to the extent of the corporation's earnings and profits. Falsetti v. Commissioner, 85 T.C. 332, 356 (1985).

For the personal use of corporate property to be treated as a constructive dividend, it must: (1) Be nondeductible by the corporation; and (2) represent some economic gain or benefit to the shareholder. Palo Alto Town & Country Vill., Inc. v. Commissioner, 565 F.2d 1388, 1391 (9th Cir. 1977) (the Tax Court must find appropriate facts in the record to support a determination that disallowed expenses constitute constructive dividends to the taxpayer), affg. in part, revg. in part and remanding T.C. Memo. 1973-223. A corporation's inability to substantiate a deduction, without more, is not grounds for treating corporate expenditures as constructive dividends to the individual. Erickson v. Commissioner, 598 F.2d 525, 531 (9th Cir. 1979), affg. in part and revg. in part T.C. Memo. 1976-147; Palo Alto Town & Country Vill., Inc. v. Commissioner, supra at 1391; Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225,

1238-1239 (1971); Ashby v. Commissioner, 50 T.C. 409, 417-418 (1968).

As discussed above, TPM has failed to establish a business purpose for the $30,000 of rent payments to Anthony D'Errico for use of the Barton Drive property. Further, D'Errico testified that he derived personal benefit from the Barton Drive property. Despite testifying that his benefit was limited to the top-level bedroom and top-level common areas, he has not presented any additional evidence to support his claim. D'Errico presented two lease agreements at trial, one between his father and TPM and the other a sublease between TPM and himself. These agreements identically describe the Barton Drive property as the leased property. The sublease therefore fails to support D'Errico's testimony. Nowhere does it specify that only a portion of the Barton Drive property was subject to the sublease, let alone describe the top-level bedroom and top-level common areas. D'Errico has therefore failed to establish that he did not derive a personal benefit from his use of the entire Barton Drive Property.

TPM's Form 1120 for 2004 states that TPM had end-of-year retained earnings of $68,844. Accordingly, TPM had sufficient earnings and profits, and we sustain respondent's determination with regard to the constructive dividend.

IV.  Section 6662(a) Penalty

Section 6662(a) and (b)(2) imposes an accuracy-related penalty upon any underpayment of tax resulting from a substantial understatement of income tax.  The penalty is equal to 20 percent of the portion of any underpayment attributable to a substantial understatement of income tax.  Id.  An understatement is "substantial" if it exceeds the greater of:  (1) 10 percent of the tax required to be shown on the return for the taxable year or (2) $5,000 ($10,000 in the case of a corporation).  Sec. 6662(d)(1).  Section 6662(a) and (b)(1) also imposes a penalty equal to 20 percent of the amount of an underpayment attributable to negligence or disregard of rules or regulations.  Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to maintain adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Petitioners' failure to produce records substantiating their claimed deductions supports the imposition of the accuracy-related penalty for negligence for the years at issue.

An accuracy-related penalty is not imposed on any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The taxpayer bears the burden of proof with regard to those issues.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Petitioners have failed

to show reasonable cause, substantial authority, or any other basis for reducing the penalties.  Accordingly, we find petitioners liable for the section 6662 penalty for the years at issue as commensurate with the concessions and our holdings.  See id.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decisions will be entered

under Rule 155.