T.C. Memo. 2012-149

UNITED STATES TAX COURT

JOSEPH ANTHONY D'ERRICO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

TAX PRACTICE MANAGEMENT, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 29550-09, 29793-09.           Filed May 24, 2012.

Joseph Anthony D'Errico, pro se in docket No. 29550-09.

Joseph Anthony D'Errico (an officer), for petitioner in docket No.
29793-09.

Kimberly A. Kazda, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>: With respect to Joseph D'Errico, respondent determined deficiencies in Federal income tax of $85,813 and $17,112 for tax years 2005 and 2006, respectively. Respondent also determined penalties under section 6662[1] of $17,163 and $3,422 for 2005 and 2006, respectively.

With respect to Tax Practice Management, Inc. (TPM), respondent determined deficiencies in Federal income tax of $4,852 and $1,160 for tax years ending (TYE) April 30, 2006 and 2007, respectively. Respondent also determined penalties under section 6662 of $970 and $232 for TYE April 30, 2006 and 2007, respectively. All dollar amounts are rounded.

These cases were consolidated for trial, briefing, and opinion. The issues remaining for decision after concessions[2] are:

(1) whether TPM is entitled to business expense deductions of $80,295 and $59,949 for TYE April 30, 2006 and 2007. We hold that it is not;

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded.

[2]Respondent concedes certain issues relating to a short-term capital loss, the sale price for a corporation sold, and unreported income to Mr. D'Errico from wages, salaries, and tips. Respondent also concedes some expense deductions claimed by TPM.

(2) whether TPM is liable for liable for accuracy-related penalties under section 6662 for TYE April 30, 2006 and 2007. We hold that it is;

(3) whether Mr. D'Errico received constructive dividend income from TPM of $50,042 and $53,195 for tax years 2005 and 2006, respectively, as a result of rent and airplane expenses paid by TPM. We hold that he did receive constructive dividend income for both 2005 and 2006, but not in the amounts determined by respondent;[3]

(4) whether Mr. D'Errico understated his capital gain income for 2005 by $304,111 as a result of his failure to establish the bases he claimed in connection with the sale or liquidation of three corporations. We hold that he did; and

(5) whether Mr. D'Errico is liable for accuracy-related penalties under section 6662 for tax years 2005 and 2006. We hold that he is.

---

[3]Respondent incorrectly calculated the amount of constructive dividend income received by Mr. D'Errico for 2006 because of airplane expenses paid by TPM, as discussed infra. In addition, respondent improperly included some constructive dividend income paid in 2006 for Mr. D'Errico's 2005 tax year and some constructive dividend income paid in 2007 for Mr. D'Errico's 2006 tax year, as discussed infra. The parties must determine the correct amounts of constructive dividend income to include in Mr. D'Errico's 2005 and 2006 tax years in their Rule 155 computations.

## FINDINGS OF FACT

At the time their petitions were filed, the mailing addresses of both Mr. D'Errico and TPM were in Zephyr Cove, Nevada.

1. Background

Mr. D'Errico was the sole shareholder of TPM (a C corporation incorporated in 2002) from at least January 1, 2005, to April 30, 2007. Before 2005 TPM provided management services for certain tax preparation S corporations wholly owned by Mr. D'Errico: (1) D'Errico & Wedge, Inc. (D'Errico & Wedge), in Mission Hills, California; (2) D'Errico & McCollor, Inc. (D'Errico & McCollor), in Santa Barbara, California; and (3) Joseph A. D'Errico & Associates, Inc. (D'Errico & Associates), in Lake Tahoe, Nevada. D'Errico & Associates ceased doing business during 2003 and made its only payment to TPM in 2002, but both D'Errico & Wedge and D'Errico & McCollor made payments to TPM for services provided through the end of 2004. On January 1, 2005, Mr. D'Errico sold 100% of the shares of both D'Errico & Wedge and D'Errico & McCollor to unrelated third parties. The sales of these corporations are discussed further infra. On his 2005 tax return Mr. D'Errico also claimed to have sold 100% of the shares of D'Errico & Associates although the corporation had actually been liquidated in 2003.

2. <u>TPM</u>

For its TYE April 30, 2006, TPM reported gross receipts of $33,869.[4]  TPM

also claimed deductions of $11,923 for depreciation of assets, $33,000 for rent

payments made, and $35,943 for other business expenses.  Respondent disallowed

all these deductions in his notice of deficiency but now concedes deductions totaling

$571 for accounting and banking expenses.  Respondent continues to contest the

following deductions:

| <u>Expense</u> | <u>Amount</u> |
|---|---|
| Depreciation | $11,923 |
| Rent | 33,000 |
| Airplane expenses | 17,042 |
| Auto and truck | 2,351 |
| Client expenses | 970 |
| Dues and subscriptions | 1,454 |
| Insurance | 2,661 |
| Meals and entertainment | 865 |
| Supplies | 948 |
| Telephone | 1,622 |
| Travel | 4,764 |
| Utilities | <u>2,695</u> |
| Total | 80,295 |

---

[4]These receipts comprised:   (1) $12,000 in rent payments to TPM from Mr.
D'Errico resulting from a sublease which allowed Mr. D'Errico to live in the home
in which TPM purportedly conducted business; and (2) $21,869 in airplane rental
income.  These items of income are discussed further <u>infra</u>.

For its TYE April 30, 2007, TPM reported gross receipts of $8,000.[5]  TPM

also claimed deductions of $7,324 for depreciation of assets, $22,000 for rent, and

$31,195 for other business expenses.  Respondent disallowed all deductions in his

notice of deficiency but now concedes deductions totaling $570 for accounting and

banking expenses.  Respondent continues to contest the following deductions:

| Expense | Amount |
| --- | --- |
| Depreciation | $7,324 |
| Rent | 22,000 |
| Airplane expenses | 19,351 |
| Auto and truck | 2,200 |
| Dues and subscriptions | 570 |
| Insurance | 2,521 |
| Legal and professional | 75 |
| Meals and entertainment | 754 |
| Supplies | 78 |
| Telephone | 1,495 |
| Travel | 1,090 |
| Utilities | 2,491 |
| Total | 59,949 |

A.  Rent Expenses and Income

In December 2002, Mr. D'Errico (in his capacity as president of TPM)

entered into a three-year lease with his father, Anthony D'Errico, beginning on

December 15, 2002, and ending on December 15, 2005.  The lease was for the use

---

[5]These receipts comprised rent payments to TPM from Mr. D'Errico resulting
from a sublease which allowed Mr. D'Errico to live in the home in which TPM
purportedly conducted business and are discussed further infra.

of a residence owned by Anthony D'Errico at 318 Barton Drive, Stateline, Nevada (Barton Drive home), and was renewed in December 2005 for rent of $2,750 per month. Under the lease TPM was also responsible for utility payments. The rent payments were actually made to Anthony D'Errico from TPM.

Also in December 2002, Mr. D'Errico entered into a three-year sublease with TPM for his personal use of the Barton Drive home beginning on December 15, 2002, and ending on December 15, 2005. The sublease was renewed in December 2005 for rent of $1,000 per month paid to TPM. Both the lease and the sublease appear to have ended December 31, 2006, and TPM paid no rent to Anthony D'Errico during 2007.

Neither the lease nor the sublease identifies portions of the property which would be used by TPM for business purposes or that would be used by Mr. D'Errico personally. Mr. D'Errico testified that he used three downstairs rooms only for business and "a small loft upstairs" for his personal residence. He further testified that certain common areas were shared.

B. Airplane Expenses and Income

In December 2004 TPM purchased a Cessna airplane (airplane) for $137,500. Mr. D'Errico had a pilot's license and several years of flight training at the time TPM purchased the airplane. Mr. D'Errico testified that TPM purchased

the airplane in order for him to travel quickly between TPM's purported office at the Barton Drive home in Stateline, Nevada, and his two active tax preparation corporations,[6] D'Errico & McCollor and D'Errico & Wedge, which were in southern California (a commute of approximately 400 miles). At the time TPM purchased the airplane Mr. D'Errico knew that he was going to be selling D'Errico & McCollor and D'Errico & Wedge.

TPM took delivery of the airplane on December 24, 2004, and Mr. D'Errico used it on December 26 and 27, 2004, to travel to southern California for discussions with the parties buying D'Errico & McCollor and D'Errico & Wedge. On December 29, 2004, TPM entered into an "Aircraft Leaseback Agreement" (leaseback agreement) which allowed the flight training company Flying Start Aero to make the airplane "available to the public for rental" for no more than 75 hours per month. The leaseback agreement stated that TPM was entering into the agreement "with the intention of generating some revenue for the purpose of offsetting a portion of the aircraft operating costs". Even though the airplane was leased to Flying Start Aero, TPM was still responsible for airplane expenses such as insurance and maintenance. The lease was canceled by Flying Start Aero in early 2006 upon TPM's failure to pay such expenses.

---

[6]D'Errico & Associates had ceased doing business in 2003.

The airplane was not used in TPM's tax management related business during 2005 or 2006. Petitioner claimed in his testimony that he used the airplane on business related trips in both January and April 2007. However, Mr. D'Errico did not introduce a log of his airplane use during 2007 into evidence. The only 2007 airplane records summarized expenses one Matthew Laughlin incurred in a trip to Los Angeles. Mr. Laughlin had been Mr. D'Errico's certified flight instructor since Mr. D'Errico began to fly in 2001. Mr. D'Errico testified that Mr. Laughlin "came out from Denver to talk to me about multiple uses for the airplane. He thought it would be a good idea for us to start our own flight school, in which he would have a flight school and I would rent the airplane to his flight school."

On its TYE April 30, 2006, tax return TPM reported income from the airplane rental of $21,869, airplane expenses of $17,042, and airplane depreciation of $11,408. On its TYE April 30, 2007, tax return TPM reported no airplane rental income,[7] airplane expenses of $19,351, and total depreciation of $7,324.[8] Mr. D'Errico testified that some of the airplane expenses listed on the TYE April 30,

---

[7]The lease with Flying Start Aero was terminated before TPM's April 30, 2007, tax year began.

[8]No depreciation schedule was attached to TPM's tax return and no other evidence was introduced which would show the amount of depreciation attributable to the airplane.

2007, tax return are the result of TPM's rental of other airplanes for Mr. D'Errico's continued flight training.[9]

C.  Other Expenses Deducted by TPM

Mr. D'Errico testified that he and TPM had a reimbursement plan whereby he paid most of TPM's expenses and would later be reimbursed by TPM for those expenses.  A brief summary of the expenses follows.

Mr. D'Errico testified that TPM purchased a Chevrolet Tahoe solely for TPM's business use.  Mr. D'Errico also personally owned a Jeep Cherokee which he claims to have used for business purposes.  TPM deducted auto and truck expenses of $2,351 and $2,200 for its TYE April 30, 2006 and 2007, respectively. For the TYE April 30, 2006, $2,146 was claimed for fuel and $205 was claimed for car registration expenses.  For the TYE April 30, 2007, $1,375 was claimed as an "expense reimbursement" to Mr. D'Errico, $319 was claimed for fuel, and $506 was claimed for car registration expenses.

TPM deducted $970 of "client expenses" for its TYE April 30, 2006.  Mr. D'Errico testified that the expenses were unreimbursed expenses related to clients of his tax preparation businesses.

---

[9]This additional flight training was for purposes of obtaining an advanced flight rating which would allow Mr. D'Errico to fly during bad weather.

TPM deducted dues and subscription expenses of $1,454 and $570 for its TYE April 30, 2006 and 2007, respectively. These expenses were for several airplane and flight magazine subscriptions, Mr. D'Errico's membership in several airplane owner and pilot organizations, and an On-Star navigation system for the Chevrolet Tahoe.

TPM deducted insurance expenses of $2,661 and $2,521 for its TYE April 30, 2006 and 2007, respectively. These expenses comprised mostly insurance on the Chevrolet Tahoe and on the Barton Drive home although $55 of insurance expense is listed as for a "Tax Prep Bond" during the TYE April 30, 2006. It was not clear why the "Tax Prep Bond" expense was incurred.

TPM deducted $75 in legal and professional fees for its TYE April 30, 2007. Mr. D'Errico did not testify regarding these expenses.

TPM deducted expenses for meals and entertainment of $865 and $754 for its TYE April 30, 2006 and 2007, respectively. Petitioners introduced several meal receipts and credit card statements to support TPM's claimed deductions. Many of the receipts are for meals purchased in Mexico.

TPM deducted expenses for supplies of $948 and $78 for its TYE April 30, 2006 and 2007, respectively. Many of these supplies were purchased for the

airplane, although petitioners also produced receipts from stores such as Home Depot and Staples.

TPM deducted telephone expenses of $1,622 and $1,495 for its TYE April 30, 2006 and 2007, respectively. These expenses included the cost for a land line in the Barton Drive home listed in Anthony D'Errico's name, as well as the cost for two Verizon Wireless cellular phone numbers listed in Mr. D'Errico's name. TPM paid these expenses out of its checking account.

TPM deducted travel expenses of $4,764 and $1,090 for its TYE April 30, 2006 and 2007, respectively. Credit card statements introduced to support the deductions showed travel expenses such as car rentals and airline flights. Some of the flight descriptions show that a number of the flights were to or from Dallas, Texas. In addition, Mr. D'Errico was reimbursed $2,472 by TPM for a hotel expense in Las Vegas, Nevada. During his trial testimony Mr. D'Errico never mentioned doing business in either Dallas or Las Vegas.

TPM deducted utility expenses for the Barton Drive home of $2,695 and $2,491 for its TYE April 30, 2006 and 2007, respectively. These expenses included cable television,[10] Internet, gas, electric, and certain repairs.

---

[10]The cable package included additional expenses for "The Movie Tier" and the "Digital Sports Tier".

3. <u>Mr. D'Errico</u>

   A. <u>Rent and Airplane Expenses Paid by TPM</u>

   As discussed above, TPM paid Mr. D'Errico's father $33,000 in rent for the Barton Drive home during its TYE April 30, 2006, and $22,000 in rent during its TYE April 30, 2007. Respondent determined these rent payments to constitute constructive dividend income paid to Mr. D'Errico by TPM in 2005 and 2006, respectively.[11]

   TPM also paid airplane expenses of $17,042 and $31,195 during its TYE April 30, 2006 and 2007, respectively. Respondent determined these airplane expense payments to constitute constructive dividend income paid to Mr. D'Errico by TPM in 2005 and 2006, respectively. It appears respondent's determination of $31,195 of airplane expenses paid during TPM's TYE April 30, 2007, was in error, as TPM claimed only $19,351 of airplane expenses as a deduction for that year.[12]

------

[11]As discussed further <u>infra</u>, the fact that TPM and Mr. D'Errico used different tax years caused respondent to erroneously include certain constructive dividends paid in 2006 in Mr. D'Errico's 2005 income and constructive dividends paid in 2007 in Mr. D'Errico's 2006 income.

[12]Respondent's notice of deficiency for Mr. D'Errico states:

   It has been determined that you received income in the amount

(continued...)

The $31,195 figure was the total amount of "Other Deductions" listed on TPM's Form 1120, U.S. Corporation Income Tax Return, and attached Statement 1. This error was not addressed by either petitioners or respondent.

### B. Tax Preparation Corporations and Capital Gain Income

Before 2005 Mr. D'Errico had been a tax practitioner who did work for the tax preparation corporations which he owned, in addition to the management work he did for TPM. For his work, Mr. D'Errico received a salary from the corporations. Mr. D'Errico also took corporate draws, which were reflected as negative stockholders' equity on each corporation's balance sheets. Mr. D'Errico prepared the financial statements, including the balance sheets, for each of his tax preparation corporations.

At some point Mr. D'Errico decided he no longer wanted to be a tax practitioner and would rather concentrate on his management practice. D'Errico & Associates ceased doing business during 2003. On January 1, 2005, Mr. D'Errico

---

[12](...continued)

of $53,195.00 from dividends constructively received which were reported incorrectly on your return for the taxable year ended December 31, 2006. These amounts are determined to be taxable to you because you failed to establish that they are excludable from gross income under provision of the Internal Revenue Code. The amounts received were claimed to be for airplane expenses $31,195.00 and rent $22,000.00 to your corporation. Accordingly, your income is increased $53,195.00. [sic]

sold D'Errico & Wedge to an unrelated third party for $400,000.  Also on January 1, 2005, Mr. D'Errico sold D'Errico & McCollor to an unrelated third party for $500,000.  The price of this latter sale was later lowered by $55,000 because D'Errico & McCollor did not meet a gross receipts condition in the sale contract.

After selling D'Errico & Wedge and D'Errico & McCollor, Mr. D'Errico worked for both corporations in his personal capacity during 2005 and 2006.  However, Mr. D'Errico testified that some expenses were captured and deducted by TPM because there was an oral agreement between the corporations and TPM that although he would be employed in his personal capacity, he would be doing the same work he would have done had the corporations hired him as an independent contractor through TPM.[13]

On his 2005 income tax return Mr. D'Errico claimed a $1,000 basis in D'Errico & McCollor.  D'Errico & McCollor's balance sheet dated December 31, 2004, shows capital stock of $1,000, as well as a $40,000 outstanding draw to Mr. D'Errico.

On his 2005 income tax return Mr. D'Errico claimed a $28,500 basis in D'Errico & Wedge.  D'Errico & Wedge's balance sheet dated December 31, 2003,

---

[13]Mr. D'Errico recognized that this arrangement was "a little odd".

shows capital stock of $1,000, as well as a $34,000 outstanding draw to Mr. D'Errico. No later balance sheets for D'Errico & Wedge were introduced.

On his 2005 income tax return Mr. D'Errico claimed to have sold D'Errico & Associates for $1,000 although the corporation had actually been liquidated in 2003. Mr. D'Errico claimed a basis of $274,611 in D'Errico & Associates on his 2005 income tax return. D'Errico & Associates' balance sheet dated December 31, 2002, shows capital stock of $4,000, as well as a $283,000 outstanding draw to Mr. D'Errico.

Mr. D'Errico testified that the amount of the outstanding draw paid to him as listed on the December 31, 2002, balance sheet for D'Errico & Associates was an error, even though the balance sheet balanced. When asked whether he had any evidence to support his statement that the balance sheet was incorrect, Mr. D'Errico stated that D'Errico & Associates' 2002 corporate tax return would "probably" suffice. However, D'Errico & Associates' 2002 corporate tax return is in conformity with the balance sheets, reporting $283,000 in property distributions (including cash) other than dividend distributions reported on Form 1099-DIV, Dividends and Distributions. D'Errico & Associates' January 31, 2003, balance sheet shows no outstanding draw to Mr. D'Errico and also reflects large

adjustments made to net income and retained earnings as compared with the December 31, 2002, balance sheet.

4. Other Information

On September 11, 2009, respondent issued a notice of deficiency to TPM for TYE April 30, 2006 and 2007. Also on September 11, 2009, respondent issued a notice of deficiency to Mr. D'Errico for tax years 2005 and 2006. Petitioners timely filed their petitions contesting the deficiencies and penalties.

At the close of trial the Court ordered petitioners and respondent to file seriatim briefs, with petitioners filing an answering brief 45 days after respondent's opening brief. Petitioners failed to file an answering brief, despite being told multiple times at trial that they should use these briefs as their opportunity to use the evidence to support their legal positions.

OPINION

Because the Court ordered a posttrial brief and petitioners failed to file a brief, we could dismiss this case entirely. See Rules 123, 151(a); Stringer v. Commissioner, 84 T.C. 693, 704-708 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986). Despite petitioners' lack of response, we will not do so.

## I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and taxpayers bear the burden of proving that the Commissioner's determinations are incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they have met all requirements necessary to be entitled to the claimed deductions. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Petitioners have not argued that section 7491 applies in this case and therefore bear the burden of proof with respect to most issues (we address the burden of proof on the constructive dividend issue below).

Petitioners have submitted voluminous evidence in support of their positions.[14] That evidence includes a large number of technical documents, financial statements, contracts, and copies of receipts. Many of the exhibits are at least partially handwritten and difficult to decipher. While Mr. D'Errico did make some attempt during his trial testimony to use the evidence to support petitioners' positions, that testimony was often brief and vague. The testimony typically summarized an exhibit as a whole, rather than describing specific facts contained

---

[14]The evidence consisted of over 150 exhibits spanning approximately 2,500 pages.

within.  By failing to file a posttrial brief petitioners have ignored our instructions to use the evidence in the record to support their legal positions.  We need not (and will not) undertake the work of sorting through every piece of evidence petitioners have provided in an attempt to find support for petitioners' ultimate legal positions taken in this case.  See Hale v. Commissioner, T.C. Memo. 2010-229 (refusing to sort through 317 pages of disorganized evidence in an attempt to determine whether a taxpayer provided adequate substantiation when that taxpayer failed to file a brief).  We will confine our examination to those exhibits which are well organized or which were well summarized by Mr. D'Errico in his testimony.

II. TPM

Section 162(a) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Taxpayers are required to maintain records sufficient to establish the amounts of allowable deductions and to enable the Commissioner to determine the correct tax liability.  Sec. 6001; Shea v. Commissioner, 112 T.C. 183, 186 (1999).  No deduction is allowed for personal, living, and family expenses. Sec. 262(a).

Certain expenses described in section 274 are subject to strict substantiation rules. No deduction shall be allowed for, among other things, traveling expenses, entertainment expenses, gifts, and expenses with respect to "listed property" defined in section 280F(d)(4) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement": (1) the amount of the expense or other item; (2) the time and place of the travel, entertainment or use, or date and description of the gift; (3) the business purpose of the expense or other item; and (4) in the case of entertainment or gifts, the business relationship to the taxpayer of the recipients or persons entertained. Sec. 274(d).

A. <u>Rent Paid to Anthony D'Errico</u>

Section 162(a)(3) provides for a deduction for ordinary and necessary rental expenses incurred in carrying on a trade or business. TPM claimed deductions for rent expenses of $33,000 and $22,000 for its TYE April 30, 2006 and 2007, respectively. Respondent argues that TPM did not use the Barton Drive home for business purposes. We find that TPM has failed to prove its entitlement to deductions for the rent expenses.

Although TPM admits part of the Barton Drive home was used for Mr. D'Errico's personal purposes, it contends that a larger portion of the home was

used for business purposes. TPM presented a sublease as evidence supporting its claim, but neither the lease nor the sublease specifies which areas of the home were to be used for personal or business activities. TPM failed to produce records of any business activity it performed at the property. TPM also failed to show why it needed the Barton Drive home for business when it was not conducting any tax-related services during TYE April 30, 2006 and 2007. We also note that the Barton Drive home was approximately 400 miles from Mr. D'Errico's primary places of employment in southern California during those tax years. Considering the evidence presented, we find TPM has failed to establish that it conducted business-related activities at the Barton Drive home, and we sustain respondent's determination disallowing deduction of the rent expenses by TPM.

B. Airplane Expenses and Depreciation

TPM claims it is entitled to deductions for both airplane expenses under section 162 and airplane depreciation under section 167. Respondent argues that the airplane was not property used in TPM's tax management business or property otherwise held for the production of income. We find that TPM has failed to prove its entitlement to deductions for the airplane expenses and airplane depreciation.

TPM argues that the airplane was necessary for its tax management business because Mr. D'Errico had to travel between Nevada and southern California to fulfill TPM's business obligations to D'Errico & McCollor and D'Errico & Wedge. However, at the time TPM purchased the airplane, Mr. D'Errico knew that he was going to be selling D'Errico & McCollor and D'Errico & Wedge. The only business-related use of the airplane shown by petitioners was Mr. D'Errico's use of the airplane to travel to southern California in December 2004 to speak with the parties buying D'Errico & McCollor and D'Errico & Wedge. TPM has produced no evidence that the airplane was used in TPM's tax management business after 2004.

Mr. D'Errico also testified that TPM entered "the business of renting * * * [the airplane] out". To determine whether a taxpayer is conducting a trade or business requires an examination of the facts of each case. Higgins v. Commissioner, 312 U.S. 212, 217 (1941). For a taxpayer to be engaged in a trade or business, the primary purpose for engaging in the activity must be for income or profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Whether an enterprise is conducted as a business for profit is a matter of intention and good faith. Am. Props., Inc. v. Commissioner, 28 T.C. 1100, 1111 (1957), aff'd, 262 F.2d 150 (9th Cir. 1958). The reasonableness of the taxpayer's belief that the

activity will generate a profit is not relevant. <u>Hillcone Steamship Co. v. Commissioner</u>, T.C. Memo. 1963-220. However, a mere hope that an activity will generate profits, in the absence of any specific plan to generate a profit, is inconsistent with an allegation that the belief is in good faith. <u>Tax Practice Mgmt. v. Commissioner</u>, T.C. Memo. 2010-266; <u>Sutherland v. Commissioner</u>, T.C. Memo. 1968-20.

TPM has not proven that it entered into the lease agreement with Flying Start Aero with the primary purpose of making a profit. Indeed, the lease agreement itself stated that TPM was entering the agreement "with the intention of generating some revenue for the purpose of offsetting a portion of the aircraft operating costs". The Court of Appeals for the Ninth Circuit (to which this case is appealable) has held that a profit motive does not exist where "activities represented mere attempts to recoup some of * * * [the taxpayers'] costs." <u>Carter v. Commissioner</u>, 645 F.2d 784, 786 (9th Cir. 1981), <u>aff'g</u> T.C. Memo. 1978-202. We therefore find that TPM was not engaged in the trade or business of renting out the airplane.

Depreciation is an accounting device that recognizes that the physical consumption of a capital asset in a business activity is a true cost of doing business, since the asset is being depleted. <u>Commissioner v. Idaho Power Co.</u>, 418 U.S. 1, 10

(1974); <u>Rooney v. Commissioner</u>, T.C. Memo. 2011-14.  Section 167(a) allows as a depreciation deduction a reasonable allowance for exhaustion, wear and tear, and obsolescence of property if the taxpayer uses the property in a trade or business or other income-producing activity.  <u>See also</u> sec. 1.167(a)-1(a), Income Tax Regs.  As we have already found the airplane was not used in TPM's tax management business or otherwise held for the production of income, we likewise find TPM has failed to meet the requirements to deduct airplane depreciation expenses.

    C.  <u>Other Expenses</u>

        1.  <u>Automobile Expenses</u>

Passenger automobiles and any other property used as a means of transportation are generally "listed property" as defined by section 280F(d)(4).  Secs. 274(d)(4), 280F(d)(4)(A)(i) and (ii).  Accordingly, with certain exceptions (none of which TPM has shown it meets), deductions for car and truck expenses must satisfy the strict substantiation requirements of section 274.  TPM did not provide sufficient evidence that such expenses were actually incurred as part of TPM's trade or business, as required by section 274(a).  Accordingly, TPM has failed to meet the substantiation requirements of section 274 with respect to the automobile expenses and is not entitled to corresponding deductions.

## 2. Client Expenses

TPM has not produced evidence that the "client expenses" it deducted were actually expenses of TPM. It appears that the expenses are actually those of the tax preparation corporations formerly owned by Mr. D'Errico. We find TPM has not proven its entitlement to a deduction for these expenses.

## 3. Dues and Subscription Expenses

These expenses were for several airplane and flight magazine subscriptions, Mr. D'Errico's membership in several airplane owner and pilot organizations, and an On-Star navigation system for the Chevrolet Tahoe. We have already found that TPM failed to prove its entitlement to deductions for airplane or automobile expenses. We likewise find TPM has failed to prove its entitlement to deductions for related dues and subscription expenses.

## 4. Insurance Expenses

The insurance expenses comprised mostly insurance on the Chevrolet Tahoe and on the Barton Drive home, although $55 of insurance expense is listed as for a "Tax Prep Bond" during the TYE April 30, 2006. We have already found that TPM failed to prove its entitlement to deductions for automobile expenses or to establish that it conducted business-related activities at the Barton Drive home. In addition, TPM introduced no evidence pertaining to the "Tax Prep Bond" insurance expense.

Accordingly, we find that TPM failed to prove its entitlement to deductions for these insurance expenses.

### 5. Legal and Professional Expenses

Mr. D'Errico did not testify regarding the legal and professional expenses, and TPM did not submit any evidence which might substantiate them. Accordingly, we find TPM failed to prove its entitlement to deductions for those expenses.

### 6. Meals and Entertainment

The heightened substantiation requirements of section 274 apply to meals and entertainment expenses. TPM introduced several meal receipts and credit card statements to support its claimed deductions. However, TPM did not provide sufficient evidence that such expenses were actually incurred as part of its trade or business as required by section 274(a).[15] Accordingly, TPM has failed to meet the substantiation requirements of section 274 with respect to the meals and entertainment expenses and is not entitled to corresponding deductions.

---

[15]It was not explained why TPM attempted to deduct expenses for meals purchased in Mexico. Mr. D'Errico did not testify that he ever did any business in Mexico, either personally or through TPM.

7.  Supplies

TPM failed to establish any business purpose for the supply expenses.

Accordingly, we find TPM failed to prove its entitlement to deduct the amounts of

those expenses.

8.  Telephone Expenses

The telephone expenses included the cost for a land line in the Barton Drive

home listed in Anthony D'Errico's name, as well as the cost for two Verizon

Wireless cellular phone numbers listed in Mr. D'Errico's name.  We have already

found that petitioners failed to establish that TPM conducted business-related

activities at the Barton Drive home.  Likewise, we find that TPM failed to establish

a business purpose for its payment of the Barton Drive home landline telephone.

TPM is therefore not entitled to deduct the landline telephone expenses.

The heightened substantiation requirements of section 274 apply to cellular

telephone expenses incurred during the years at issue.  Sec. 280F(d)(4);[16] Bogue v.

Commissioner, T.C. Memo. 2007-150.  Petitioners did not provide evidence that

---

[16]Sec. 280F(d)(4) was amended by the Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec. 2043(a), 124 Stat. at 2560, which removed cellular phones and other similar telecommunications equipment from "listed property" subject to sec. 274(d).  However, that amendment is effective only for tax years beginning after December 31, 2009.  Id. sec. 2043(b).

such expenses were actually incurred as part of TPM's trade or business, as required by section 274(a). Accordingly, TPM has failed to meet the substantiation requirements of section 274 with respect to the cellular phone expenses and is not entitled to corresponding deductions.

### 9. Travel Expenses

The heightened substantiation requirements of section 274 also apply to travel expenses. Sec. 274(d)(1). TPM produced receipts and Mr. D'Errico's personal credit card statements to substantiate the travel expenses. However, petitioners did not provide sufficient evidence that those expenses were actually incurred as part of TPM's trade or business as required by section 274(a).[17] Accordingly, TPM has failed to meet the substantiation requirements of section 274 with respect to the travel expenses and is not entitled to corresponding deductions.

### 10. Utilities

The utility expenses for the Barton Drive home paid by TPM included those for cable television, Internet, gas, electricity, and certain repairs. We have already

---

[17]For example, petitioners made no mention of any potential business which TPM had in Dallas, Texas, or Las Vegas, Nevada, yet TPM seeks to deduct expenses reimbursed to Mr. D'Errico for flights to Dallas and a $2,472 hotel expense in Las Vegas.

found that petitioners failed to establish that TPM conducted business-related activities at the Barton Drive home. Likewise, we find that petitioners failed to establish a business purpose for TPM's payment of the Barton Drive home utilities. TPM is therefore not entitled to deduct the utility expenses.

III. Mr. D'Errico

A. Constructive Dividends

The determinations of constructive dividend income received by Mr. D'Errico are determinations of unreported income. The Court of Appeals for the Ninth Circuit[18] has held that for the presumption of correctness to attach to the notice of deficiency in unreported income cases, the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity, see Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), or demonstrating that the taxpayer actually received unreported income, Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982). If the Commissioner introduces some evidence that the taxpayer received unreported

---

[18]It appears an appeal of these cases would be made to the Court of Appeals for the Ninth Circuit under sec. 7483(b)(1) given the activities which took place in Nevada and California. However, the parties did not stipulate or present sufficient evidence to determine Mr. D'Errico's legal residence or TPM's principal place of business or principal office or agency. Rather, the parties only stipulated that the mailing addresses of both Mr. D'Errico and TPM were in Zephyr Cove, Nevada.

income, the burden shifts to the taxpayer, who must establish by a preponderance of the evidence that the deficiency was arbitrary or erroneous. See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97. Considering the evidence presented regarding TPM's payment of rent and airplane expenses, we find respondent has established an adequate evidentiary foundation to shift the burden of proof to Mr. D'Errico on this issue.

Section 301 requires a taxpayer to include in gross income amounts received as dividends. Generally, a dividend is a distribution of property by a corporation to its shareholders out of its earnings and profits. Sec. 316(a). A dividend need not be formally declared or even intended by a corporation. Noble v. Commissioner, 368 F.2d 439, 442 (9th Cir. 1966), aff'g T.C. Memo. 1965-84. When a shareholder's use of corporate property serves no legitimate corporate purpose, the value of the use of that property may constitute constructive dividend income paid to that shareholder. Falsetti v. Commissioner, 85 T.C. 332, 356 (1985).

For the personal use of corporate property to be treated as a constructive dividend, it must: (1) be nondeductible by the corporation and (2) represent some economic gain or benefit to the shareholder. Palo Alto Town & Country Vill., Inc.

v. Commissioner, 565 F.2d 1388, 1391 (9th Cir. 1977), aff'g in part, rev'g in part and remanding T.C. Memo. 1973-223. A corporation's inability to substantiate a deduction, without more, is not grounds for treating corporate expenditures as constructive dividends to the individual. Erickson v. Commissioner, 598 F.2d 525, 531 (9th Cir. 1979), aff'g in part, rev'g in part T.C. Memo. 1976-147; Palo Alto Town & Country Vill., Inc. v. Commissioner, 565 F.2d at 1391; Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225, 1238-1239 (1971).

As discussed above, TPM failed to establish that it conducted business-related activities at the Barton Drive home, with the result that the rent payments made to Anthony D'Errico are not deductible by TPM. Further, Mr. D'Errico failed to introduce evidence to support his claim that he used only a portion of the Barton Drive home as his personal living area. Neither the lease between TPM and Anthony D'Errico nor the sublease between Mr. D'Errico and TPM identifies certain areas of the Barton Drive home reserved for TPM's business use. We find that Mr. D'Errico derived a personal benefit from his use of the entire Barton Drive home and received constructive dividend income as a result of the rent payments made by TPM.

Petitioners have also failed to prove TPM's entitlement to deductions for the airplane expenses. Further, petitioners have failed to introduce evidence to show

that Mr. D'Errico did not benefit from TPM's purchase of the airplane or TPM's paying for rental of another airplane for Mr. D'Errico to fly. Mr. D'Errico admitted that he "enjoy[ed] flying and everything" and that he used the rented airplane to continue his flight training. Mr. D'Errico also discussed using TPM's airplane to start a flight training school with his certified flight instructor, Mr. Laughlin. Finally, petitioners failed to substantiate any amount of business travel or lack of Mr. D'Errico's personal use of the airplane during the years at issue.[19] We find that Mr. D'Errico derived a personal benefit from the airplane expenses paid by TPM and received constructive dividend income as a result.

As previously noted, respondent erroneously included certain constructive dividends paid in 2006 in Mr. D'Errico's 2005 income and constructive dividends paid in 2007 in Mr. D'Errico's 2006 income. Respondent's error was a result of the fact that Mr. D'Errico owed taxes on the basis of the calendar year, while TPM owed taxes on the basis of a tax year ending April 30. As a result, respondent determined the amounts of expenses paid by TPM in the first four months of 2006

---

[19]Mr. D'Errico stated at trial that it was bad for an airplane to sit unused on the ground for extended periods and that "You always want to have them keep running and keep them well maintained." As the airplane was not used in either TPM's tax management business or through the Flying Start Aero lease (which had been canceled) in 2006, it seems likely that Mr. D'Errico made some personal use of the airplane during 2006.

and 2007 to be constructive dividend income includable for Mr. D'Errico's 2005 and 2006 tax years, respectively.[20]  Neither party addressed this issue, and we are unable to determine the correct distribution of constructive dividends from the evidence in the record.  The parties must resolve this issue in their Rule 155 computations.

Under sections 301(c) and 316(a), distributions are dividends taxable to shareholders as ordinary income to the extent of the earnings and profits of the corporation, and any amount received by a shareholder in excess of earnings and profits is considered a nontaxable return of capital to the extent of the shareholder's basis in his stock.  Truesdell v. Commissioner, 89 T.C. 1280, 1294-1295 (1987).  Any amount received in excess of both the earnings and profits of the corporation and the shareholder's basis in his stock is treated as gain from the sale or exchange of property.  Id.

TPM's tax returns appear to show insufficient retained earnings to allow respondent to treat all of the constructive dividends as taxable ordinary income to Mr. D'Errico.  However, on the basis of our rulings in this case and in Tax Practice

---

[20]For example, respondent included rent payments made in the first four months of 2006 in Mr. D'Errico's 2005 income as constructive dividends.  Respondent also included airplane-related expenses paid in the first four months of 2006 and 2007 in Mr. D'Errico's 2005 and 2006 income, respectively, as constructive dividends.

Mgmt. v. Commissioner, T.C. Memo. 2010-266 (a prior case involving Mr. D'Errico and his corporations),[21] TPM may have sufficient retained earnings for all of the constructive dividends to be treated as taxable ordinary income to Mr. D'Errico. The parties must resolve this issue in their Rule 155 computations.[22] To the extent TPM does not have retained earnings sufficient to cover the constructive dividends received by Mr. D'Errico, the excess amounts are first considered nontaxable returns of capital to Mr. D'Errico to the extent of his basis in his TPM stock and thereafter treated as gains from the sale or exchange of property. Secs. 301(c)(2), 316(a)(3); Truesdell v. Commissioner, 89 T.C. at 1294-1295.

B. Capital Gain Income

Gain or loss from the sale or other disposition of property is the excess of the amount realized over the adjusted basis of the property. Sec. 1001(a). The basis in a shareholder's stock in an S corporation is reduced by losses, deductions,

---

[21]In Tax Practice Mgmt. v. Commissioner, T.C. Memo. 2010-266, we agreed with the Commissioner that TPM was not entitled to deductions of $166,421 for its TYE April 30, 2005, and that Mr. D'Errico received constructive dividends of $30,000 from TPM during 2004.

[22]We are unable to decide this issue because of the uncertainty of the amounts of constructive dividend income Mr. D'Errico received in 2005 and 2006, as previously discussed.

nondeductible expenses which do not constitute capital expenditures, and tax-free distributions under section 1368. Sec. 1367(a)(2). Respondent claims that the draws Mr. D'Errico took from his three tax preparation S corporations should be construed as basis-reducing distributions under section 1368(b)(1) to Mr. D'Errico because petitioners offered no evidence that the draws were repaid or were to be repaid. We agree with respondent.

The forgiveness of a shareholder's debt by an S corporation is considered a distribution of property. See Haber v. Commissioner, 52 T.C. 255, 262 (1969), aff'd per curiam, 422 F.2d 198 (5th Cir. 1970); see also sec. 301(c); sec. 1.301-1(m), Income Tax Regs. If an S corporation has no accumulated earnings and profits (and none of the three tax preparation S corporations did), the distribution is nontaxable to the extent of the shareholder's adjusted basis in the stock. See sec. 1368(b)(1).

Unlike D'Errico & McCollor and D'Errico & Wedge, D'Errico & Associates was liquidated. Amounts received by a shareholder in a complete liquidation of a corporation are treated as full payment in exchange for the shareholder's stock. Sec. 331(a). The gain or loss to a shareholder from a liquidating distribution is determined under section 1001 by subtracting the cost or other basis of the stock from the amount of the distribution. See sec. 331(c); sec. 1.331-1(b), Income Tax

Regs. When a corporation cancels debt that is owed to it by a shareholder in connection with a complete liquidation, the amount of the debt is treated as a distribution under section 331(a). Robson v. Commissioner, T.C. Memo. 2000-201.

Petitioners offered no evidence that Mr. D'Errico ever repaid any of the draws he took from his three tax preparation S corporations. In addition, there was no evidence presented that Mr. D'Errico remained liable for the outstanding draws to D'Errico & McCollor or D'Errico & Wedge after these corporations were sold on January 1, 2005. Mr. D'Errico prepared balance sheets for D'Errico & Associates which showed an outstanding draw to Mr. D'Errico of $283,000 as of December 31, 2002, but no outstanding draw as of January 31, 2003. When asked to explain the accounting, Mr. D'Errico claimed that the December 31, 2002, balance sheet was incorrect. However, the balance sheet balanced and was in conformity with D'Errico & Associates' 2002 Form 1099-DIV. Petitioners offered no other evidence to show that the balance sheet was incorrect.

Because petitioners offered no evidence that Mr. D'Errico repaid or remained liable for the draws taken from the three tax preparation S corporations, we find the draws reduce Mr. D'Errico's basis in the stock he held in each corporation under section 1368(b)(1). This reduction in basis results in an increase in Mr. D'Errico's

capital gain realized upon the sale or dissolution of the three tax preparation corporations of $304,111 for 2005.

## IV. Section 6662 Accuracy-Related Penalties

Respondent determined that both petitioners were liable for the 20% accuracy-related penalty under section 6662(a) and (b)(1) for negligence or disregard of rules and regulations, or in the alternative, under section 6662(a) and (b)(2) for substantial understatement of income tax. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to maintain adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority under section 6664. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447. Respondent has met the burden of production

because petitioners failed to produce adequate records substantiating their claimed deductions.

An accuracy-related penalty is not imposed on any portion of an underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The taxpayer bears the burden of proof with regard to those issues. Higbee v. Commissioner, 116 T.C. at 446. Petitioners have not argued the reasonable cause exception applies in these cases and have not provided any evidence indicating that their tax deficiencies were due to reasonable cause or that substantial authority exists to support their positions. Accordingly, we find petitioners liable for the section 6662(a) penalty for the years at issue. See id. at 447-448.

V. Conclusion

We find that TPM is not entitled to business expense deductions of $80,295 and $59,949 for TYE April 30, 2006 and 2007. We further find that Mr. D'Errico received constructive dividend income from TPM for tax years 2005 and 2006, respectively,[23] and that he understated his capital gain resulting from the sale or

---

[23]As explained supra, the amount of constructive dividend income received in 2005 and 2006 and whether the constructive dividend income should be taxable to Mr. D'Errico as ordinary income, nontaxable return of capital, or gain from the sale or exchange of property are issues the parties must resolve in their Rule 155

(continued...)

liquidation of his three tax preparation corporations by $304,111 for 2005.  Finally, we find that both petitioners are liable for the accuracy-related penalty under section 6662 for all years in issue.

    To reflect the foregoing,

                                        <u>Decisions will be entered</u>

                                        <u>under Rule 155</u>.

---

²³(...continued)
computations.