T.C. Memo. 2013-293

UNITED STATES TAX COURT

AUSTIN OTOLOGY ASSOCIATES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

PATRICK W. SLATER, II, AND ROBIN H. SLATER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 21355-11, 21356-11.        Filed December 30, 2013.

Gerald L. Brantley, for petitioners.

Brooke S. Laurie, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Respondent determined Austin Otology Associates (Austin

Otology) had paid and deducted a number of personal expenses of its sole

shareholder, Dr. Patrick Slater, for taxable years 2007, 2008, and 2009.

[*2] Respondent issued notices of deficiency disallowing the deductions, imputing constructive dividends to Dr. Slater and his wife, Robin, and determining deficiencies for the years at issue. Respondent also imposed accuracy-related penalties under section 6662[1] on all petitioners for each year. These cases were consolidated for trial, briefing, and opinion. After concessions,[2] the issues remaining for decision are:

(1) whether respondent properly denied business deductions Austin Otology claimed for taxable years 2007, 2008, and 2009. We hold that he did, except for those concerning certain depreciation expenses;

(2) whether the Slaters received constructive dividends from Austin Otology in taxable years 2007, 2008, and 2009. We hold that they did, but in amounts less than those respondent determined; and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners have conceded that the following expenses claimed as deductions by Austin Otology should be disallowed and are constructive dividends to the Slaters: (1) 2007 expenses for auto repairs; (2) 2007 expenses for veterinary services; (3) 2008 expenses for hunting licenses; and (4) 2009 expenses for auto repairs. Petitioners also concede that Dr. Slater underreported his 2007 wages by $4,000.

**[*3]**  (3) whether respondent properly imposed accuracy-related penalties under section 6662 for taxable years 2007, 2008, and 2009.  We hold that he did, but the penalties must be adjusted for consistency with this opinion.

FINDINGS OF FACT

When the petitions were filed, the Slaters resided in Texas, and Austin Otology's principal place of business was in Texas.

Dr. Slater is a board-certified physician specializing in neurotology, the study and treatment of neurological disorders of the ear.  During the tax years at issue, Dr. Slater owned all the shares of Austin Otology, a personal service corporation, and was its only physician employee.  Dr. Slater joined Austin Otology in 1998 and was initially one of two physician employees.  When he joined Austin Otology, Dr. Slater was developing an ointment to treat swimmer's ear.  Accordingly, Dr. Slater's employment contract allowed him to continue researching the ointment and perform other developmental research.  The contract provided that the corporation would receive a 20% ownership interest in any patent Dr. Slater received.  Dr. Slater patented the swimmer's ear ointment in 2011 and has worked to develop other products since he began at Austin Otology.  He has applied for three more patents on products he designed to counteract inner ear disorders.

[*4]   The Slaters jointly filed a Form 1040, U.S. Individual Income Tax Return, and Austin Otology filed a Form 1120, U.S. Corporation Income Tax Return, for each of the tax years at issue.  Respondent examined the returns petitioners filed for taxable years 2007, 2008, and 2009.  Respondent disallowed deductions claimed as "Other Deductions" for all three years and disallowed depreciation deductions for 2008.  Respondent determined that the expenses that were nondeductible at the corporate level were taxable to the Slaters as constructive dividends because Austin Otology had paid them for the personal benefit of Dr. Slater and his family.  Respondent's determinations are as follows:[3]

Austin Otology:

| Year | Deficiency | Penalty |
|------|-----------|---------|
| 2007 | $36,402 | $7,280 |
| 2008 | 40,311 | 8,062 |
| 2009 | 40,659 | 8,132 |

Slaters:

| Year | Deficiency | Penalty |
|------|-----------|---------|
| 2007 | $18,463 | $3,693 |
| 2008 | 11,208 | 2,242 |
| 2009 | 17,977 | 3,595 |

---

[3]All dollar amounts are rounded to the nearest dollar.

**[\*5]** We can group the disallowed deductions petitioners have not conceded into the following six categories: (1) hunting expenses; (2) North Carolina vacations and fishing charter; (3) home security system; (4) vehicle GPS system; (5) depreciation; and (6) unexamined expenses.

Hunting Expenses

Among the inventions Dr. Slater has researched since he started with Austin Otology is "Shooter's Ear", a product he designed to both enhance hearing and protect the ear from damage caused by loud noises. The product functions as a normal hearing aid in most situations, but shuts off and protects the ear when it detects sounds over a threshold decibel level.

Dr. Slater developed and refined Shooter's Ear while he hunted on property he leased in Laredo, Texas. Dr. Slater leased the property specifically for hunting, but it provided a convenient setting to experiment with Shooter's Ear. Dr. Slater had hunted on the property years before he developed Shooter's Ear and continued to do so after he completed his Shooter's Ear prototype. Austin Otology made the lease payments and deducted the related expenses for each of the years at issue.

The Laredo property provided a convenient location to test Shooter's Ear, but Dr. Slater decided to go elsewhere to test its performance in colder conditions. From 2007 to 2009 Dr. Slater took four trips to British Columbia. During the trips

**[*6]** he documented the cold weather performance of potential Shooter's Ear components.

During the years at issue, Austin Otology also paid for three hunting trips to more local destinations on which Dr. Slater researched Shooter's Ear. The seven total trips are summarized by year below:

2007

In May 2007 Dr. Slater traveled alone to Cranbrook, British Columbia, for a weeklong guided hunt. During the trip Dr. Slater tested a device called the Electronic Shooter's Protective device (ESP). ESP represented the closest analog to Shooter's Ear on the market, and Dr. Slater wanted to identify its shortcomings, so he could improve upon them with Shooter's Ear. During the trip Dr. Slater kept notes rating ESP's performance in a number of different categories, including effectiveness, comfort, and battery life.

In October 2007 Dr. Slater again traveled by himself to British Columbia for a weeklong guided hunt. During this trip Dr. Slater experimented with the possibility of using his swimmer's ear ointment in conjunction with a traditional hearing aid to protect the ear and amplify sound simultaneously. Dr. Slater made daily records on the ointment's and the hearing aid's performance. He ultimately

[*7] concluded that the ointment was not a suitable means for protecting the ear, because it failed in extreme environments and under significant exertion.

In late November 2007 Dr. Slater took a weekend hunting trip to west Texas. This time he brought a business associate with him. Dr. Slater wore a hearing aid during the hunt and kept notes on its performance.

2008

In October 2008 Dr. Slater took a third trip to British Columbia, this time for a 12-day hunt. Dr. Slater traveled alone and again tested commercially available hearing aids. On this trip Dr. Slater compared a behind-the-ear hearing aid with one inserted deep in the ear canal and logged his observations of their performance. Dr. Slater ultimately used a form of the deep-insert design for his Shooter's Ear prototype.

In December 2008 Dr. Slater took a weekend hunting trip to west Texas with his son. During the trip he used the deep-insert hearing aid and documented its performance.

2009

The unexamined expenses for which respondent denied deductions for 2009 include the cost of two hunting trips. In February 2009 Dr. Slater traveled to Sonora, Mexico, to hunt with the CEO of a local hospital with which Dr. Slater

[*8] had recently partnered. Although Dr. Slater wore a hearing aid and documented its performance, research was not his main priority on this trip. Dr. Slater saw the trip as an opportunity to build a stronger relationship with his new business partner. Dr. Slater estimated that the trip was 90% personal, so Austin Otology paid only 10% of his expenses on the trip.

In July 2009 Dr. Slater traveled by himself to Smithers, British Columbia, for a weeklong guided hunt. On this trip Dr. Slater experimented with the programming capabilities of the deep-insert hearing aid. He took daily notes on the device's performance.

Dr. Slater killed several animals on his hunting trips, and Austin Otology paid and deducted related taxidermy expenses. Dr. Slater intended to display the mounts at his clinic but has instead kept them in storage. The Slaters have never displayed the mounts at their personal residence.

North Carolina Vacations and Fishing Charter

In 2008 the Slaters vacationed in North Carolina with their children and Mrs. Slater's father, Leigh Hebbard, who kept Austin Otology's books. In 2007 Dr. Slater and Mr. Hebbard chartered a deep sea fishing boat. Austin Otology deducted expenses on its 2007 return that it had paid for the vacation home and the fishing charter.

**[*9]** <u>Home Security System</u>

Austin Otology paid and deducted an expense of $7,500 to upgrade the security system at the Slaters' personal residence after several vehicle break-ins were reported in the area. The Slaters installed three infrared cameras to augment their existing alarm system. Dr. Slater can access patient records via his personal computer and regularly reviews patient records at home.

<u>Vehicle GPS System</u>

Austin Otology paid for the installation of a GPS system in Dr. Slater's 2008 Ford F-250 truck and deducted the expense on its 2007 return. The GPS system includes an entertainment system and security features. Dr. Slater drives the truck on his daily commute and on longer business trips.

<u>Depreciation</u>

In November 2008, anticipating that Dr. Slater would be making frequent overnight business trips to College Station, Austin Otology purchased a recreational vehicle (RV). Dr. Slater planned to stay in the RV to save on hotel expenses. Shortly after the purchase Dr. Slater reduced his services in College Station and no longer needed the RV. Dr. Slater used the RV on one business trip in December 2008 and then stored it at his hunting property in Laredo. The RV was available to accommodate guests if necessary, but the need never arose.

[*10] Austin Otology elected to deduct a portion of the RV's purchase price under section 179 and began depreciating the remaining balance on its 2008 return. Respondent disallowed the section 179 deduction and the depreciation deduction and imputed a constructive dividend to the Slaters for the RV's full purchase price.

Unexamined Expenses

Respondent's examining agent requested substantiating documents for $117,107 of deductions Austin Otology claimed on its 2009 return. However, the agent closed the case before petitioners satisfied the request. The parties have agreed that $3,526 was for personal expenses and constituted a constructive dividend to the Slaters. The remaining identifiable expenses consist of $26,435 for hunting trips and $7,700 for the Laredo hunting lease. A $50,000 payment to Westlake Surgical, LP, and $29,446 of payments to Dr. Slater make up the remaining disallowed deductions, but their purpose is unclear.

OPINION

I. Burden of Proof

Generally, the taxpayer bears the burden of proving, by a preponderance of the evidence, that the determinations of the Commissioner in a notice of deficiency are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

**[\*11]** Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any claimed deductions. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The burden of proof on factual issues that affect a taxpayer's liability for tax may shift to the Commissioner where "a taxpayer introduces credible evidence with respect to * * * such issue." Sec. 7491(a)(1). Petitioners have not argued that section 7491 applies and therefore bear the burden of proof with respect to the income tax adjustments (we address the burden of proof on the constructive dividend issue below).

## II. Deductions

Petitioners contend that the charges at issue qualify as business expenses of Austin Otology. Section 162 allows a deduction for "ordinary and necessary" business expenses. An expense is ordinary under section 162 if it is considered "normal, usual, or customary" in the context of the particular business out of which it arose. Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful to the taxpayer's trade or business. Commissioner v. Tellier, 383 U.S. 687 (1966). A taxpayer may not deduct an expenditure primarily motivated by personal considerations. See Henry v. Commissioner, 36 T.C. 879, 884 (1961).

**[*12]** Taxpayers must satisfy more rigorous requirements to deduct entertainment expenses. Section 274(a)(1) identifies two kinds of entertainment expenses: (1) those related to entertainment <u>activities</u> and (2) those related to entertainment <u>facilities</u>. An entertainment activity is "any activity which is of a type generally considered to constitute entertainment, amusement, or recreation". Sec. 1.274-2(b)(1)(i), Income Tax Regs. Examples of such activities include "hunting, fishing, [and] vacation and similar trips, including such activit[ies] relating solely to the taxpayer or the taxpayer's family." <u>Id.</u> An entertainment facility is "[a]ny item of personal or real property owned, rented, or used by a taxpayer * * * for, or in connection with, entertainment". Sec. 1.274-2(e)(2)(i), Income Tax Regs. Such items may include "yachts, hunting lodges, fishing camps, swimming pools, tennis courts, bowling alleys, automobiles, airplanes, apartments, hotel suites, and homes in vacation resorts." <u>Id.</u>

Taxpayers may deduct expenses associated with entertainment <u>activities</u> only if they are "directly related to * * * the active conduct of the taxpayer's trade or business". Sec. 274(a)(1)(A). Taxpayers may not deduct expenses associated with entertainment <u>facilities</u>. Sec. 274(a)(1)(B). With these rules in mind, we evaluate each category of petitioners' expenses.

**[\*13]**  A.  <u>North Carolina Vacation Home</u>

The vacation home Austin Otology rented for the Slaters' 2008 trip to North Carolina qualifies as an entertainment facility because it is an item of real property rented by the taxpayer in connection with entertainment.  Consequently, Austin Otology should not have deducted the associated expenses, and we sustain respondent's disallowance of the deduction.

B.  <u>Hunting and Fishing Expenses</u>

The Laredo hunting property is real property Dr. Slater leased in connection with hunting, which is per se entertainment under section 1.274-2(b)(1)(i), Income Tax Regs.  Therefore, the property constitutes an entertainment facility for purposes of section 274.  Consequently, Austin Otology improperly deducted the related expenses, and we sustain respondent's disallowance of the deduction.

The expenses Austin Otology paid for the North Carolina fishing trip and the other hunting expenses relate to "entertainment activities" because hunting and fishing generally constitute entertainment, recreation, or amusement.  Therefore, Austin Otology properly deducted them only if they were directly related to the active conduct of its trade or business.

**[\*14]**  Section 1.274-2(c)(3), Income Tax Regs., provides that an expenditure shall be considered directly related to the active conduct of the taxpayer's trade or business if it satisfies each of four requirements:[4]

(1) the taxpayer must have had more than a general expectation of deriving some income or other business benefit at an indefinite future time;

(2) during the entertainment period, the taxpayer must have engaged in a bona fide business transaction, other than entertainment, for the purpose of obtaining such business benefit;

(3) the principal character of the combined business and entertainment was the active conduct of the taxpayer's trade or business; and

(4) the expenditure was allocable to the taxpayer and a person or persons with whom the taxpayer engaged in the active conduct of trade or business during the entertainment.

The hunting trips do not satisfy the third factor.  Thus, Austin Otology improperly deducted the hunting expenses because they did not directly relate to its trade or business.

---

[4]Sec. 1.274-2(c)(4)-(6), Income Tax Regs., provides three more circumstances under which expenditures may directly relate to the taxpayer's trade or business:  (1) when the expenditure takes place in a clear business setting; (2) when the expenditure is for services performed; and (3) when the expenditures are allocable to business meals.  None of those circumstances exists here.

[*15]  Under section 1.274-2(c)(3)(iii), Income Tax Regs., we presume that the principal character of a hunting trip is not the active conduct of business.  To rebut the presumption, the taxpayer must clearly establish the contrary.

We address the British Columbia trips first.  Dr. Slater claims he took the trips to perform research in cold weather.  However, Dr. Slater could have tested the products in the same conditions without purchasing expensive hunting trips.  Outdoor shooting ranges would have provided the same conditions as the guided hunts at a fraction of the cost.

Dr. Slater credibly testified that he performed research on the trips and presented supporting documentation.  However, he has not clearly established that research was the focus of the trips.  Dr. Slater's logs indicate that he spent only a small portion of his time documenting his research.  He never took more than five pages of notes on any trip, even though some lasted more than a week.

Dr. Slater enjoys hunting.  He took hunting trips and leased hunting property before he began developing Shooter's Ear.  Dr. Slater could have performed his research without hunting, and he spent only a small portion of his time on the trips documenting his research.  On these facts we find that petitioners have not clearly established that the principal character of the trips was the active conduct of Austin Otology's business.  Therefore, the expenses did not directly

[*16] relate to the active conduct of a trade or business, and Austin Otology improperly deducted them.

Petitioners also failed to clearly establish that the principal character of the other three trips was the active conduct of Austin Otology's business. Dr. Slater admitted that his 2009 trip to Sonora, Mexico, was 90% personal. Therefore, by definition, it did not directly relate to the active conduct of Austin Otology's business.

On his two trips to west Texas, Dr. Slater hunted once with his son and once with a business colleague. These two trips produced four total pages of research notes, and Dr. Slater could have performed the same research without hunting. These trips look even more like entertainment than the British Columbia trips because Dr. Slater had company. Petitioners have again failed to overcome the regulation's presumption that hunting trips are principally for entertainment. Accordingly, we sustain respondent's disallowance of the related deductions.

We also find that Austin Otology incorrectly deducted the fishing charter it purchased for Dr. Slater and Mr. Hebbard because personal considerations primarily motivated the expenditure. Under section 1.274-2(c)(3)(iii), Income Tax Regs., we also presume that the principal character of fishing trips is not the active conduct of business. Austin Otology has not rebutted that presumption here. Dr.

[*17] Slater testified that he planned the fishing trip at least partly to create an opportunity to train Mr. Hebbard and improve his work performance. However, Dr. Slater has not presented any evidence beyond his testimony that he actually trained Mr. Hebbard on the trip. A fishing boat does not provide a suitable environment for instructing an employee on the finer points of bookkeeping, and we doubt any such instruction occurred. Accordingly, we sustain respondent's disallowance of the related deduction.

Finally, we find that Austin Otology improperly deducted taxidermy expenses during the years at issue. Dr. Slater claims that he originally intended to display the mounts at the clinic but later changed his mind. We find this explanation implausible because Austin Otology continued to pay taxidermy expenses for years even though Dr. Slater never displayed any mounts at the clinic. The mounts symbolize Dr. Slater's personal hunting accomplishments and have not benefited Austin Otology in any way. We find that personal considerations primarily motivated the taxidermy expenditures, and thus we sustain respondent's denial of the related deductions.

C. Security System

Whether a taxpayer may deduct an expense under section 162 as an ordinary and necessary business expense depends on the primary motive for incurring the

[*18] expense.  Beck v. Commissioner, T.C. Memo. 2001-270.  If business purposes primarily motivated the expenditure, the taxpayer may deduct it; if personal objectives primarily motivated the expenditure, the taxpayer may not deduct it; and if substantial business and personal motives exist, the taxpayer may deduct the portion of the expenses allocable to the business motive.  Int'l Artists, Ltd. v. Commissioner, 55 T.C. 94 (1970).  The determination of the taxpayer's primary motive is factual.  Because we find that personal considerations primarily motivated the security system installation, we hold that respondent properly denied the related deduction.

Regulations issued under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936, require Dr. Slater to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information."  45 C.F.R. sec. 164.530(c)(1) (2013).  Dr. Slater routinely takes patient records to his home and can access patient information on his personal computer.  He claims that he upgraded his home security system to comply with HIPAA's physical safeguard requirements.  The security system upgrade consists of three infrared cameras, which were added to an existing alarm system.

**[\*19]**   HIPAA does not require the level of protection the security system upgrade provides.  Dr. Slater had an alarm system before the upgrade, and installing cameras did not significantly increase the security of patient records.  As the security system was installed at Dr. Slater's primary residence, he personally benefited from the expenditure.  Austin Otology gained very little if anything from the expenditure; HIPAA did not require the upgrade, and it did not significantly increase patient record security.  On these facts, we find that personal purposes primarily motivated the expenditure.  Consequently, respondent properly denied the related deduction.

D.  GPS System

To deduct expenses associated with a passenger vehicle, section 274(d) requires a taxpayer to:

> substantiate[] by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the * * * use of the facility or property, * * * (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property * * *

Dr. Slater has provided a receipt to substantiate the GPS system purchase, but he has failed to provide records that adequately demonstrate business use.

[*20] Consequently, we hold that respondent properly denied Austin Otology's deduction of the associated expenses.

Dr. Slater testified that he used the truck for both business and personal purposes. He has provided no documentation from which we may determine the appropriate allocation to each use. He testified that he used the truck on business trips, but he has not produced a mileage log. The taxpayer bears the burden of demonstrating the propriety of any deduction, and Dr. Slater has failed to do so. Under these circumstances, respondent properly denied Austin Otology's deduction for the expenses associated with the GPS installation.

E. Depreciation

A corporation may claim depreciation deductions under section 167 for assets it uses in its trade or business. A corporation may elect under section 179 to immediately deduct the cost (or a portion of the cost) of certain assets. The corporation may make the election only for assets that it uses predominantly in its trade or business. If the corporation ceases using an asset for business purposes, it must refrain from claiming further depreciation deductions on the asset and must recapture excess section 179 deductions.

Austin Otology claimed section 179 and depreciation deductions totaling $37,568 for 2008 related to the RV that Dr. Slater purchased to use on business

[*21] trips. After a single trip circumstances changed, and Dr. Slater no longer needed the RV for business purposes. He took the RV out of service and stored it at his hunting property in Laredo.

Austin Otology purchased the RV in November 2008 and took it out of service before yearend. When Austin Otology filed its 2008 return, Dr. Slater knew that he would no longer use the RV for business purposes. Therefore, Austin Otology should not have claimed section 179 deductions. The RV remained in service for one month. Consequently, Austin Otology may claim one month of depreciation. We sustain respondent's denial of section 179 and depreciation deductions to the extent they exceed this amount.

F. Unexamined Expenses

To support the deductions respondent disallowed for 2009, petitioners have provided nearly 200 pages of receipts, invoices, check copies, and ledger printouts. Among the documents, we identified payments for hunting trips and the hunting lease, and we addressed them above. The remaining expenses consist of a $50,000 payment to Westlake Surgical, LP, and two checks to Dr. Slater totaling $29,446. Although the documents indicate that Austin Otology paid the expenses, they do not adequately substantiate the business purpose of the expenditures. Petitioners have not organized the documents to permit us to efficiently evaluate

[*22] deductibility. Neither petitioners' brief nor Dr. Slater's testimony addresses these expenses in any detail. Petitioners would apparently leave this Court with the tedious task of reviewing the documents for some link to a business purpose. "We need not (and shall not) undertake the task of sorting through the voluminous evidence petitioner has provided in an attempt to see what is, and what is not, adequate substantiation of the items on petitioner's returns." Hale v. Commissioner, T.C. Memo. 2010-229. Because Austin Otology has failed to meet the substantiation requirements under section 162, we hold that respondent properly denied deductions for the unexamined expenses.

## III. Constructive Dividends

Section 301 requires a taxpayer to include in gross income amounts received as dividends. Generally, a dividend is a distribution of property by a corporation to its shareholders out of its earnings and profits. Sec. 316(a). A dividend need not be formally declared or even intended by a corporation. United States v. Smith, 418 F.2d 589, 593 (5th Cir. 1969). Unintended dividends are termed "constructive dividends". Respondent has imputed constructive dividends to the Slaters from Austin Otology for the years 2007 through 2009.

A corporation's inability to substantiate a deduction, without more, is not grounds for treating corporate expenditures as constructive dividends to the

**[\*23]** shareholder. Erickson v. Commissioner, 598 F.2d 525, 531 (9th Cir. 1979), aff'g in part, rev'g in part T.C. Memo. 1976-147. Of determinative significance is whether the distribution was primarily for shareholder benefit. Sammons v. Commissioner, 472 F.2d 449, 452 (5th Cir. 1972), aff'g in part, rev'g in part and remanding T.C. Memo. 1971-145.

The determinations of constructive dividend income received by the Slaters are determinations of unreported income. For the presumption of correctness to attach to the notice of deficiency in unreported income cases, the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity or demonstrating that the taxpayer actually received unreported income. See Sealy Power, Ltd. v. Commissioner, 46 F.3d 382, 386 (5th Cir. 1995), aff'g in part, rev'g in part, and remanding in part T.C. Memo. 1992-168. If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer, who must establish by a preponderance of the evidence that the deficiency was arbitrary or erroneous. See Portillo v. Commissioner, 932 F.2d 1128, 1133-1134 (5th Cir. 1991), aff'g in part, rev'g in part T.C. Memo. 1990-68. We find that respondent has established an adequate evidentiary foundation to shift the burden of proof to petitioners on this issue.

**[*24]**  The Slaters were clearly the primary beneficiaries of many of the expenditures at issue here.  Austin Otology financed the Slaters' family vacation to North Carolina and hunting and fishing trips for Dr. Slater and his guests.  The Slaters benefited from the installation of the security system because it was installed at their personal residence.  They benefited from the GPS system because it was installed in a vehicle they used for personal trips.  Petitioners' brief explicitly disputes the constructive dividend treatment for only the taxidermy expenses, the RV purchase, and the unexamined expenses.  We discuss each in turn.

### A.  Taxidermy Expenses

The Slaters argue that they did not receive a personal benefit from Austin Otology's payment of taxidermy expenses, because they never displayed the animal mounts at their personal residence.  They claim that Dr. Slater originally intended to display the mounts at the clinic but later decided to keep them in storage.  Nevertheless, we find that the taxidermy expenses primarily benefited Dr. Slater. The mounts represented his personal hunting successes, and he could retrieve them from storage to impress his friends or recall memorable hunts.  However minimal these personal benefits may be, they still outweigh any benefit to Austin Otology.

**[*25]**  B.  RV Purchase

"In determining whether a constructive dividend has been made, '(t)he crucial concept * * * is that the corporation conferred an economic benefit on the stockholder without expectation of repayment.'" Ireland v. United States, 621 F.2d 731, 735 (5th Cir. 1980) (quoting Smith, 418 F.2d at 593).  The Slaters did not receive any economic benefit from Austin Otology's purchase of the RV, so they did not receive a corresponding constructive dividend.

Dr. Slater acquired the RV when he thought he would be making frequent overnight business trips.  After he used the RV for one trip, his plans changed, and Austin Otology no longer needed the RV.  Dr. Slater stored the RV at his hunting property for convenience, but the Slaters have not used it for personal purposes. Dr. Slater conceded at trial that he would probably allow guests to stay in the RV if the need arose, but this has never happened.  Accordingly, the Slaters have derived no personal benefit from the RV, and we find that respondent improperly imputed a constructive dividend to them.

C.  Unexamined Expenses

For the unexamined expenses in 2009, respondent produced a summary of disallowed deductions and corresponding constructive dividends.  We can identify several of the expenditures using other evidence in the record.  For example, the

[*26] summary includes the 2009 Laredo hunting lease payment and two hunting trips addressed above. The remaining disputed entries consist of two checks to Dr. Slater totaling $29,446 and a check to Westlake Surgical, LP, for $50,000. Respondent noted on the summary that the $50,000 expenditure was originally charged to an account titled "Slater-Taxable". The fact that two of the checks were made out to Dr. Slater and the third was originally charged to a suspicious account provides sufficient evidence that the payments were made for the Slaters' benefit. Accordingly, the burden shifts to the Slaters to prove by a preponderance of the evidence that respondent's deficiency determination was erroneous.

To refute respondent's claim that the expenditures were made primarily to benefit the Slaters, petitioners have presented receipts, check copies, and general ledger entries. The documents substantiate the expenditures, but do not explain their purpose. Moreover, to the extent we can ascertain the purpose, it appears that each of the expenditures benefited the Slaters. For example, the $50,000 check to Westlake Surgical appears to be for Dr. Slater's capital contribution to a limited partnership. The other checks were paid to Dr. Slater personally. Without further explanation, we cannot determine how the expenditures benefited anyone other than Dr. Slater. Accordingly, petitioners have failed to meet their burden of

[*27] proof, and we sustain respondent's determinations concerning the unexamined expenses.

IV. Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20% penalty if any part of an underpayment of tax results from, among other things, negligence or disregard of rules or regulations or a substantial understatement of income tax.

The Commissioner bears the burden of production on the applicability of an accuracy-related penalty. He must come forward with sufficient evidence indicating the propriety of the penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets this burden, the taxpayer bears the burden of proving that the penalty is inappropriate because of reasonable cause and good faith. See Higbee v. Commissioner, 116 T.C. at 446-447.

Respondent satisfies his burden of production by showing that the understatements of income for all years meet the definition of "substantial". See Janis v. Commissioner, T.C. Memo. 2004-117, aff'd, 461 F.3d 1080 (9th Cir. 2006), and aff'd, 469 F.3d 256 (2d Cir. 2006). An understatement of income tax is "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Section 6662(d)(2)(A) defines an

[*28] "understatement" as the excess of the tax required to be shown on the return over the tax actually shown on the return, less any rebate. Petitioners' understatements easily exceed the threshold, even after we reduce them to account for our findings above. Respondent has therefore met his burden of production.

Petitioners argue that the accuracy-related penalty does not apply, because they filed their returns in good faith. Pursuant to section 6664(c)(1), an accuracy-related penalty under section 6662 does not apply to any portion of an underpayment for which a taxpayer establishes that he or she: (1) had reasonable cause and (2) acted in good faith. Whether a taxpayer has acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including efforts to assess the proper tax liability, the taxpayer's knowledge and experience, and the extent to which the taxpayer relied on the advice of a tax professional. Sec. 1.6664-4(b)(1), Income Tax Regs. "Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Id.

We find that petitioners have not established a defense under section 6664(c)(1). Petitioners have presented no evidence to support the adequacy of their efforts to assess their proper tax liabilities. Petitioners had ample opportunity to consult with a tax professional to determine their proper liabilities. A bare

**[\*29]** assertion that the underpayments resulted from an honest mistake does not establish a good-faith defense.  Accordingly, we sustain respondent's imposition of accuracy-related penalties under section 6662 for the years at issue.

To reflect the foregoing and concessions made by petitioners,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.